53 N.J. Super. 53 (1958)
146 A.2d 488
EMIL GOEBELBECKER, CLAIMANT-APPELLANT,
v.
STATE OF NEW JERSEY, BOARD OF REVIEW, DEPARTMENT OF LABOR AND INDUSTRY, DIVISION OF EMPLOYMENT SECURITY AND CURTISS-WRIGHT CORPORATION, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1958.
Decided December 1, 1958.
*54 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Peter Cammelieri argued the cause for claimant-appellant (Mr. Harvey Smith, of counsel; Mr. Edward Casel, on the brief).
Mr. Edward A. Kaplan argued the cause for respondent Division of Employment Security, Department of Labor and Industry (Mr. Clarence F. McGovern, attorney, and Mr. Kaplan on the brief).
Mr. Robert P. Knapp, Jr., of the New York Bar, argued the cause for respondent Curtiss-Wright Corporation (Messrs. Smith, James & Mathias, attorneys; Messrs. Breed. Abbott & Morgan, of the New York Bar, and Mr. Allen C. Mathias, of counsel).
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal by claimant from a denial of unemployment compensation benefits under the New Jersey Unemployment Compensation Law, N.J.S.A. 43:21-5.
On November 25, 1957 Emil Goebelbecker filed a claim for unemployment benefits with the Department of Labor and Industry, stating that he was not employed because of "lack of work," although he was "ready, willing and able *55 to work full time." After claimant was interviewed, the examiner determined that his "failure, without good cause, to accept or apply for suitable work," disqualified him from unemployment benefits. Claimant sought and was given another interview, also resulting in a denial of benefits. He then appealed to the Appeal Tribunal, Department of Labor and Industry, and after hearing, it was again determined that claimant was disqualified from unemployment benefits under N.J.S.A. 43:21-5(a). Dissatisfied, Goebelbecker took a further appeal to the Board of Review, which affirmed the determination of the Appeal Tribunal.
Claimant appeals to this court from the decision rendered by the Board of Review.
The essential facts are as follows: Claimant on October 25, 1951 was employed by the Wright-Aeronautical Division of the Curtiss-Wright Corporation as a "miller experimental." He continued in the same capacity until September 2, 1957, at which time his basic wage was $2.61 per hour, plus 10% for working the second shift. On September 2, 1957 he was transferred, for lack of work, and was downgraded to work as miller, at a base pay of $2.35 per hour, plus a shift premium. He continued in the capacity of miller until October 28, 1957 when he was given the opportunity to return to his former work as miller experimental, at $2.77 per hour. He accepted the offer.
On November 25, 1957, again because of lack of work in the occupation as miller experimental, he was offered a job as broacher at $2.32 per hour, on the first day shift. He refused to accept the transfer because (1) he had never worked as a broacher; (2) he had never operated a broaching machine; (3) he was a skilled worker and, as such, objected to taking a helper's job at lower pay than he had been receiving. He said that he made no effort to examine the broaching machine, although he had seen it; he conceded he had the right to try broaching on a trial basis. He testified that he would not take a helper's job at lower pay since he could "go outside" and "find a job with better pay and in my line."
*56 During 1957 the Curtiss-Wright Corporation suffered widespread layoffs due to lack of work, causing 7,000 to 8,000 employees to be separated from their employment. Before laying off a worker the employer was required, under its collective bargaining agreement, to offer him rated work in the same occupational or family group if his seniority warranted such action.
Claimant was a member of Local 669 of the United Automobile Workers, representing employees of the Curtiss-Wright Corporation under a three-year collective bargaining agreement beginning September 19, 1957. The agreement provides classifications for occupational groups. Occupational Group No. 32 is entitled "Milling" and includes plaintiff's first job as miller experimental, miller, and the job he subsequently was offered as broacher. The agreement provides that where there is a transfer to another job, which in effect is a downgrading, the employees with the greatest seniority shall, when subject to layoff, displace employees with the least seniority in other occupations in lower labor grades in the occupation group in which they are subject to layoff.
When claimant made his claim he stated that if he had taken the job as broacher, he might have lost his seniority rights in the event he was unable to perform the work satisfactorily and might also have received a permanent layoff. But the employer's uncontroverted testimony was that if the claimant had been unable to perform his job during a two-day trial, he would lose seniority as a broacher, but would not lose seniority in the classification of miller experimental or miller for a period of one year, which could be extended an additional two years. Furthermore, it was testified that if he had remained in the employ of Curtiss-Wright, he would have been entitled to a pension in the fall of 1958.
It was orally argued on behalf of claimant that even though he might have been retained in the broacher position by the employer, he would nevertheless, after a two-day trial period, be subject to dismissal for inefficiency. Claimant *57 contends that if he were retained in the position of broacher at the end of the two-day trial period but were later discharged as inefficient, he could under the union contract lose seniority in his original position. What claimant fears would probably occur only if the employer were acting in bad faith. We are not justified in assuming such bad faith for purposes of the present case. Moreover, claimant would have a right to review such a dismissal by the employer under the grievance procedure established by the collective bargaining agreement.
Claimant testified that beginning on January 20, 1958 he received employment elsewhere as an ornamental iron worker.
Appellant first argues that his refusal to accept the broaching job offered by his employer in place of his job as miller is not a voluntary leaving of work within the meaning of N.J.S.A. 43:21-5(a), notwithstanding his being assigned to a job in the same "family group." The argument runs that since there was no longer any work available in the job he was performing, the employer's offer of a transfer to another job was, in effect, an offer of a new job and that, therefore, his unemployment was not due to his voluntarily leaving without good cause within the meaning of N.J.S.A. 43:21-5(a), but due to a refusal to accept an offer of work under N.J.S.A. 43:21-5(c). Hence, he argues that if he is to be disqualified from benefits, the lesser penalties that attend a disqualification under N.J.S.A. 43:21-5(c) should apply.
This argument is without merit. The relationship of employer and employee was never severed by the employer; appellant remained on the company's payroll and retained both his seniority and the right to continue at work at another job in his family group. Compare Campbell Soup Co. v. Board of Review, Division of Employment Security, 13 N.J. 431, 435 (1953). The act was not intended to offer benefits to workers as an alternative to accommodating their employer's changed operations. Ordinary common sense as well as a consideration of the underlying *58 purposes of unemployment compensation require us to hold that claimant left work voluntarily rather than that he refused to accept suitable new employment. Krause v. A. & M. Karagheusian, Inc., 13 N.J. 447, 455, 456 (1953). Accordingly, we agree with the finding of the Board of Review that the language of section 5(a) is more nearly descriptive of the facts here than is the situation contemplated by section 5(c).
In Dentici v. Industrial Commission, 264 Wis. 181, 58 N.W.2d 717, 720 (Sup. Ct. 1953), the employer, due to a decrease in the volume of work, began to reduce the personnel and to transfer employees to other work for which they were qualified. The claimant was offered a transfer from the assembly to the machine department at reduced earnings. The union agreement provided that no employee should be transferred to a job for the purpose of affecting his seniority. Claimant refused to accept the transfer, insisted he was not quitting, and demanded to continue at his old job. The employer notified the claimant that his refusal constituted quitting. The court said:
"* * * Here it must be held that there was a voluntary termination of employment by the employee, because the evidence shows that by his acts he intended to leave his employment rather than accept a transfer. When an employee shows that he intends to leave his employment and indicates such intention by word or manner of action, or by conduct inconsistent with the continuation of the employee-employer relationship, it must be held * * * that the employee intended and did leave his employment voluntarily and by refusing to accept the transfer left without good cause attributable to the employer."
See also Kinter v. Unemployment Compensation Board of Review, 180 Pa. Super. 529, 119 A.2d 639 (Super. Ct. 1956); Willis v. Unemployment Compensation Board of Review, 177 Pa. Super. 68, 110 A.2d 742 (Super. Ct. 1955); Spotts v. Unemployment Compensation Board of Review, 176 Pa. Super. 484, 109 A.2d 212 (Super. Ct. 1954); Barr v. Unemployment Compensation Board of Review, 172 Pa. Super. 389, 93 A.2d 877 (Super. Ct. 1953).
*59 We must, of course, make the subsidiary determination as to whether or not claimant had good cause for leaving his employment. The burden is upon the claimant to establish a justifiable reason or excuse for his failure to accept the broacher position. Good cause means cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed. The fact that the tendered position carries with it a slightly lower wage is not in and of itself good cause for refusing to work at all. And we find no other indication in the testimony that broaching was so far beyond the competence or physical capability of claimant as to say that he exercised good judgment in not at least giving the broaching job a trial. Accordingly, we are compelled to agree that claimant left his employment voluntarily without good cause within the meaning of N.J.S.A. 43:21-5(a).
Finally, appellant argues that the broacher job was "unsuitable" within the meaning of N.J.S.A. 43:21-5(c). In view of our holding that the interruption in the employer-employee relationship was occasioned by the claimant's own voluntary act in leaving without "good cause" under N.J.S.A. 43:21-5(a), N.J.S.A. 43:21-5(c) is inapplicable. Moreover, it is obvious that many of the same considerations that go into a finding of leaving work "without good cause" within section 5(a) would be relevant in determining "suitability" of other work offered under section 5(c).
Affirmed.