85 N.J. Super. 46 (1964)
203 A.2d 635
ANDREW J. ZIELENSKI, APPELLANT,
v.
BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 1964.
Decided October 5, 1964.
*49 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Andrew J. Zielenski, appellant, pro se.
Mr. Edward A. Kaplan argued the cause for respondent (Mr. Charles Quinn, on the brief).
The opinion of the court was delivered by KILKENNY, J.A.D.
Claimant, Andrew J. Zielenski, appeals from a final determination of the Board of Review, Division of Employment Security, affirming a decision of the Appeal Tribunal, holding claimant (1) disqualified for unemployment *50 benefits as of May 30, 1963, under N.J.S.A. 43:21-5(a), upon its finding that he had left his work voluntarily "without good cause attributable to such work," and (2) ineligible for benefits from May 20, 1963 through May 25, 1963, because of his failure to report during that week at the designated time as required by Regulation 21.01.
So far as pertinent here, N.J.S.A. 43:21-5(a) provides:
"An individual shall be disqualified for benefits:
(a) For the week in which he has left work voluntarily without good cause attributable to such work, and for each week thereafter until he has earned in employment * * * at least 4 times his weekly benefit rate, as determined in each case * * *." (Italics ours)
Regulation 21.01 provides, in part:
"(b) In order to establish eligibility for benefits or for waiting week credit for any week of unemployment, the claimant shall report during such week on the day or days and at the time or times designated by a representative of the Division to the local employment service office at which he is registered for work.
(1) A claimant who has failed to report on his assigned reporting day shall be considered as having complied with this reporting requirement, provided he reports in person as soon as possible thereafter but not later than seven (7) days after his assigned reporting day, and provided, further, he shows good cause for having failed to report sooner."

I.
We consider first the issue of disqualification under N.J.S.A. 43:21-5(a).
Claimant was employed by Todd Shipyards in Hoboken, New Jersey, as an electric welder at $3.05 per hour. He filed an initial claim for unemployment benefits on February 26, 1963, following a temporary layoff on February 22, 1963. On May 13, 1963 he reopened that claim by filing an additional claim for unemployment benefits, having been sent home from work on that date for lack of work. However, he worked at the shipyard on May 14, 15, 16 and 17. Therefore for the week ending May 19, 1963 he had earned $97.60, a *51 sum more than his weekly benefit rate of $50, and became ineligible for unemployment benefits during that week. N.J.S.A. 43:21-3(b) (2).
Claimant did not work during the week of May 20, 1963. However, he was declared ineligible for unemployment benefits during that week because he did not report to the local unemployment office on Tuesday, May 21, 1963, the date assigned to him for reporting, as required by Regulation 21.01. He gave as his reason for failing to report that he was looking for work. He did mail in form BC-260-D on May 24, 1963. Also, he did personally report at the local unemployment office on May 24, 1963. He testified that he had appeared at the local unemployment office on May 20, 1963, told a woman at the information desk there that he would be unable to report on the following day because he would be looking for work, and was given the above form to fill out and mail in within seven days, in lieu of personally reporting on his assigned date. This form is intended for the use of claimants who have returned to full-time work and cannot report in person on the reporting date. Whether these facts rendered him ineligible for unemployment benefits for the week of May 20, 1963 will be considered under II, infra.
Claimant was recalled to work at the shipyard and worked there on May 28 and May 29, 1963. Even though there was work available to him on May 30, 1963, at double time because of the holiday, he refused to start work that day and went home because he did not like the job assigned to him. This assignment was to the so-called "test gang." In claimant's words: "I told them that I didn't want that job, so I quit." The employer had work for him on May 31, 1963, but he did not return to work after quitting on May 30, 1963. It is clear that claimant "left work voluntarily."
However, claimant argues that he did not do so "without good cause attributable to such work." At this point, it is well to note that the burden of proof is upon claimant to establish his right to unemployment compensation. DiMicele v. General Motors Corp., 51 N.J. Super. 167, 171 (App. Div. *52 1958), affirmed 29 N.J. 427 (1959). So, too, when an employee quits his job voluntarily, he has the burden of proving that he did so with good cause attributable to his work. Goebelbecker v. State, 53 N.J. Super. 53, 59 (App. Div. 1958). "Good cause means cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed." Ibid. See, too, Morgan v. Board of Review, 77 N.J. Super. 209, 213 (App. Div. 1962). "In providing relief against the distress suffered by individuals from involuntary unemployment, the statute is designed to serve the general public interest and not alone the interest of the unemployed." Campbell Soup Co. v. Div. of Employment Security, 13 N.J. 431, 436 (1953).
Claimant's primary reason for voluntarily quitting his job at Todd Shipyards was the unsteadiness of the job and the fact that he was working, on an average, only one or two days a week at a daily wage of $24.40. But this did not constitute good cause for giving up this partial employment for no employment at all. An employee's reason for leaving his employment must meet the test of ordinary common sense and prudence. The Unemployment Compensation Law specifically provides for those who are only partially employed. N.J.S.A. 43:21-3(b)(2). According to the statutory formula, this partially employed claimant, with a weekly rate of $50, would have been entitled to receive as unemployment benefits $60 ($50 plus 20% thereof) less his actual earnings. If he worked only one day in a week and received $24 therefor, the Division would have given him the differential of $36. If he earned $48 for two days, his unemployment check would have been $12. Thus, partial employment would have yielded him a gross of $60 weekly, whereas total unemployment in any week would have produced a maximum of $50 in unemployment benefits. And, whether working one or two days a week, he would have had adequate opportunity during the other days to seek another job providing more steady employment.
It is obvious from the foregoing that the individual's prudence and a decent regard for the public interest, by not *53 unreasonably depleting the public fund, compel the conclusion that good cause does not ordinarily exist when a person gives up partial employment for none at all. The employee who works at an unsteady employment, averaging only one or two days a week at his accustomed trade, may well be dissatisfied with his job and seek another which provides more regular employment and better weekly wages. But he has a reasonable opportunity to pursue that course on the days when he is not working and may not reasonably expect the State to pay him a greater sum than it would be required to pay if he had kept his partial employment. The fixed policy of the administrative agency in this regard constitutes a reasonable interpretation of the unemployment compensation law, a proper balancing of the welfare of the employee and a conservation of the public interest.
A similar course has been pursued in other jurisdictions. In Claim of Gadd, 278 App. Div. 1035, 106 N.Y.S.2d 945 (App. Div. 1951), it was held that where claimant chauffeur resigned his employment when he was placed on a four-day week rather than a five-day week previously worked, and was subsequently offered work by his former employer at his regular rate of pay but for only two days weekly, his refusal of such employment because he wanted full-time work was without good cause and he was disqualified from receiving unemployment benefits. See, too, Flournoy v. Brown, 140 So.2d 729 (La. Ct. App. 1962); Perry v. Brown, 162 So.2d 444 (La. Ct. App. 1964).
An unemployed claimant, receiving benefits, may be justified in refusing a job referral at materially lower wages on the theory that the claimant should have a reasonable opportunity to seek work in line with his demonstrated earning capacity. This reasoning does not apply where the claimant is gainfully employed and could have continued working until he found a better job. Skytop Lodges Inc. v. Unemployment Compensation Bd. of Rev., 188 Pa. Super. 496, 149 A.2d 143 (Super. Ct. 1959). As the Appeal Tribunal in the matter before us properly observed: "It is claimant's responsibility to do whatever is necessary and reasonable in order to *54 remain employed. The claimant left work at a time when the employer had work for him."
Claimant also asserted that he was dissatisfied with his working conditions, such as the alleged theft of his tools, heavy lifting, wet surroundings, the disturbing of his equipment and being required to perform unpleasant work. However, he never lodged any formal grievance with the appropriate union representative or employer, and apparently never made any real attempt to correct the conditions. "Mere dissatisfaction with working conditions which are not shown to be abnormal or do not affect health, does not constitute good cause for leaving work voluntarily." Medwick v. Board of Review, 69 N.J. Super. 338, 345 (App. Div. 1961). The Division of Employment Security found the claimed dissatisfaction insufficient cause for claimant's quitting his job and that his main reason for leaving was the unsteadiness of the work. The test of our judicial review is "not whether we would come to the same conclusion if the original determination was ours to make, but rather whether the fact-finder could reasonably so conclude upon the proofs." Morgan v. Board of Review, supra, 77 N.J. Super., at p. 213. Our study of the record satisfies us that the proofs support the fact findings and conclusions herein of the administrative agency.

II.
We next consider the determination of claimant's ineligibility to receive unemployment benefits for the week of May 20, 1963, because of his failure to report on his assigned date, May 21, 1963, as required by Regulation 21.01.
Claimant concedes that he did not personally report on his assigned date. But his testimony is uncontradicted that he did report on the preceding day, May 20, 1963, explained to a woman at the information desk that he would be unable to report on the morrow because he would be seeking a job, and received a form to be filled out in lieu of reporting. That *55 form was mailed in by him on May 24, and on that date he also personally reported. That form indicates that it is not to be mailed in before the reporting date, but within seven days thereafter. Claimant was either misinformed or misunderstood the import of form BC-260-D, because that form is to be filled out and mailed in only if the claimant has returned to full-time work and is unable to report on the assigned date.
The Appeal Tribunal and Board of Review ruled that "searching for work is not a good reason for failing to report on the assigned date." It is to be noted that this is not stated in the applicable regulation. Moreover, a claimant must seek work to be eligible for unemployment benefits. If on his reporting date he was keeping an appointment to get a job, that would seem to constitute "good cause for having failed to report," within the meaning of Regulation 21.01. Claimant did report in person "not later than seven (7) days after his assigned reporting day," as specified in the regulation. He should not be penalized for a bona fide misunderstanding in his use of a form given to him by the agency in view of the principle of liberal application of the law intended by the Legislature. Especially should this be so when the claimant's testimony as to instructions given him by the agency is not inherently incredible and stands uncontradicted in the record. We find that claimant did, under all the circumstances, sufficiently comply with Regulation 21.01.
We conclude that the determination of the Board of Review should be affirmed insofar as it ruled claimant disqualified as of and after May 30, 1963, by virtue of N.J.S.A. 43:21-5(a). But, insofar as claimant was held to be ineligible for benefits from May 20, 1963 through May 25, 1963, the determination is reversed. No costs.