268 N.J. Super. 54 (1993)
632 A.2d 852
PATRICIA S. TRUPO, APPELLANT,
v.
BOARD OF REVIEW AND LIBERTY MUTUAL INSURANCE, CO., RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 5, 1993.
Decided November 5, 1993.
*55 Before Judges PRESSLER, DREIER and KLEINER.
Patricia S. Trupo, appellant, filed a pro se brief.
Fred DeVesa, Acting Attorney General, attorney for respondent, Board of Review (John C. Turi, Deputy Attorney General, of counsel and on the brief).
Respondent, Liberty Mutual Insurance Co., did not file a brief.
The opinion of the Court was delivered by KLEINER, J.S.C. (temporarily assigned).
Claimant, Patricia S. Trupo, appeals a decision of the Board of Review affirming an Appeal Tribunal decision which declared her disqualified from unemployment compensation benefits and concluded that Trupo's weekly unemployment compensation benefit rate would be reduced to zero. Both conclusions were predicated upon the Board of Review's interpretation of N.J.S.A. 43:21-5(a). *56 We affirm, however, the issue raised by Trupo as to her disqualification requires discussion.
The Board of Review concluded that Trupo, having accepted an inducement for early retirement offered by her employer, Liberty Mutual Insurance Company, in its effort to substantially reduce its work force, had voluntarily left work without good cause attributable to such work, N.J.S.A. 43:21-5(a). As such, Trupo was disqualified from receiving unemployment compensation benefits.
Trupo worked as an office assistant for Liberty from February 22, 1982 until her retirement on February 28, 1992 at age sixty-one. In November 1991, Trupo, along with other employees, was offered an early retirement package by Liberty which included: (a) the addition of five years to the employee's age or work history, which would increase pension benefits; (b) company-paid medical benefits until age sixty-five, when an employee will qualify for Medicare; and (c) payment of $700 per month until age sixty-two, when an employee is entitled to social security benefits.
At her administrative hearing, Trupo admitted that she was not informed by Liberty that she definitely would be laid off if she did not accept the retirement package. Additionally, she knew that Liberty had not reached a decision as to which employees would be laid off or which employees would be transferred to other vacant positions within the company.
Trupo testified that she preferred to continue to work and had no particular present desire to retire. She expressed a fear that in the event of a job termination, she would become medically uninsured and as the head of her household, the prospect of not being medically insured was untenable. Additionally, she expressed a fear that if she elected to continue her employment, the probability of job termination was predictable, as she had the least seniority in her fourteen-employee department. As of the date of the early retirement offer, Trupo only had one year of work experience in her position as a clerical assistant. Trupo indicated that after considering her options, she believed she had no choice but to accept the early retirement proposal. She, therefore, *57 contends she should not be disqualified from receiving unemployment compensation benefits. This contention is novel and raises an issue of first impression.
Trupo's position is not without judicial precedent. In White v. Dir. of Division of Employment Sec., 382 Mass. 596, 416 N.E.2d 962 (1981), the Supreme Judicial Court of Massachusetts concluded that if a claimant reasonably believes that he will be terminated if he does not accept an early retirement plan, his leaving work will not be viewed as voluntary under the Massachusetts statute, G.L. c. 151A, § 25(e)(1).
In White, the claimant with only six years seniority elected to take an early retirement proposal after he heard a rumor of an impending layoff if the work force were not reduced by early retirement. In explaining his decision to accept an early retirement proposal, White testified, "I could see that I would be laid off." The Massachusetts court determined, Id. 416 N.E.2d at 964,
He knew that there would be layoffs based on seniority. He thought he would be the second person laid off, based on seniority, and that close to forty people would have to go. He took the incentive rather than accepting a layoff. If the claimant believed this layoff was imminent and if that belief was reasonable, a finding was required that the claimant did not leave his employment voluntarily.
The Massachusetts court therefore concluded it was required to remand the proceeding for an evidentiary hearing as to the reasonableness of the claimant's belief.
N.J.S.A. 43:21-5(a) provides in pertinent part that an individual shall be disqualified for unemployment benefits: "For the week in which the individual has left work voluntarily without good cause attributable to such work...." "Good cause" is not statutorily defined, but our courts have construed the statute to mean "`cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed.'" Domenico v. Bd. of Review, 192 N.J. Super. 284, 287, 469 A.2d 961 (App.Div. 1983) (quoting Condo v. Bd. of Review, 158 N.J. Super. 172, 174, 385 A.2d 920 (App.Div. 1978); Goebelbecker v. State, 53 N.J. Super. 53, 57, 146 A.2d 488 (App.Div. 1958)); Associated Utility Serv. v. Bd. of Review, 131 N.J. Super. 584, 586, 331 A.2d 39 *58 (App.Div. 1974); Zielenski v. Bd. of Review, 85 N.J. Super. 46, 52, 203 A.2d 635 (App.Div. 1964); Morgan v. Bd. of Review, 77 N.J. Super. 209, 213, 185 A.2d 870 (App.Div. 1962).
The phrase "good cause" was originally interpreted in Krauss v. A & M Karagheusian, 13 N.J. 447, 464, 100 A.2d 277 (1953) which concluded:
The Legislature contemplated that when an individual voluntarily leaves a job under the pressure of circumstances which may reasonably be viewed as having compelled him to do so, the termination of his employment is involuntary for the purposes of the act. In statutory contemplation he cannot then reasonably be judged as free to stay at the job.
Although the precedential importance of Krauss has been diminished by the statutory amendment in 1961 of N.J.S.A. 43:21-5(a), that interpretation of "good cause" has continuously been cited in each case decided since 1961. See Domenico v. Bd. of Review, supra, 192 N.J. Super. at 287, 469 A.2d 961 and the cases cited therein.
We held in Zielenski v. Bd. of Review, supra, 85 N.J. Super. at 52, 203 A.2d 635; "An employee's reason for leaving his employment must meet the test of ordinary common sense and prudence." "The decision to leave employment must be compelled by real, substantial and reasonable circumstances not imaginary, trifling and whimsical ones." Domenico, supra, 192 N.J. Super. at 288, 469 A.2d 961.[1]
In Domenico, we concluded that a music therapist at Ancora State Psychiatric Hospital who expressed fear of suffering physical harm by hospital patients had articulated a reasonable basis constituting good cause to voluntarily terminate employment. Id. at 287, 469 A.2d 961. Similarly, in Condo v. Bd. of Review, supra, 158 N.J. Super. at 174, 385 A.2d 920, we concluded that the claimant's reasonable belief that her personal safety was endangered *59 within the work place due to the threat of physical violence by a co-employee constituted an abnormal work condition justifying the claimant's decision to leave her employment and did not disqualify the claimant from receiving unemployment compensation benefits.
Similarly, in Associated Utility Serv. v. Bd. of Review, supra, a clerk typist who left her employment due to her employer's harassment was entitled to unemployment compensation.
We held:
Mere dissatisfaction with working conditions which are not shown to be abnormal or do not affect health, does not constitute "good cause" for leaving work voluntarily. Intentional harassment of an employee, however, is an abnormal working condition and constitutes good cause for leaving work voluntarily.
[Id. 131 N.J. Super. at 587, 331 A.2d 39 (citation omitted).]
In Domenico, Condo and Associated Utility, we dealt with abnormal conditions within the work place and the subjective effect those conditions had upon the employees' decision to voluntarily discontinue work. In each instance, fear of personal safety in Domenico and Condo and fear of future harassment in Associated Utility were deemed appropriate justification for leaving a job.
We stress, however, in each of those cases objective facts in the record allowed a conclusion that the expressed fear of the claimant was reasonable. In both Domenico and Condo the claimant was able to demonstrate prior attacks at work, and in Associated Utility, the claimant was able to specifically testify as to prior incidents of co-employee telephone calls to her home. Our decisions in Domenico, Condo and Associated Utility may be compared to Zielenski v. Bd. of Review, supra, where an employee who was dissatisfied with his job due to the unsteadiness of the number of days available each week for work was denied unemployment benefits.
In those cases in which we have sustained the decision of the Board of Review, we have analyzed the specific facts and the *60 particular reason for the claimant's decision to leave work in an effort to determine if the decision was attributable to work as is required by N.J.S.A. 43:21-5(a). Self v. Bd. of Review, 91 N.J. 453, 453 A.2d 170 (1982) (transportation difficulties compounded by a lack of public transportation); Morgan v. Bd. of Review, Div. of Employ. Sec., supra, 77 N.J. Super. at 214, 185 A.2d 870 (commuting difficulties from New York City to Fairlawn, New Jersey by subway and bus); Goebelbecker v. State, supra, 53 N.J. Super. at 57, 146 A.2d 488 (refusal to take a lower paying position offered by employer due to an employee's changed business operation).
Utilizing a fact sensitive approach and applying principles of "ordinary common sense and prudence," Zielenski v. Bd. of Review, supra, 85 N.J. Super. at 52, 203 A.2d 635, we are able to pose the issue raised in the case sub judice: Does a sixty-one year old woman, who is the head of her household and who holds a position of office clerical assistant without seniority at her place of employment and who fears an impending job layoff, have any realistic option when offered an early retirement incentive with full medical coverage other than to accept early retirement? We think not. Her choice is either to accept the offered retirement proposal or continue her employment experiencing a daily fear that she will be terminated due to a general work force reduction plan of her employer. We conclude that the daily fear of a future employment layoff which bears no correlation to work performance and the loss of all medical insurance, can engender as great a fear in an employee, subjectively, as the fear expressed by the employees in Domenico, Condo or Associated Utility. Each fear, as expressed by those claimants, was subjective, yet in each instance, the fear emanated from objective factors or conditions within the work environment. The fear expressed by Trupo of employment termination without medical insurance at age sixty-one, in our opinion, may not be viewed as "imaginary, trifling or whimsical." Domenico v. Bd. of Review, supra, 192 N.J. Super. at 52, 469 A.2d 961.
*61 We note that the importance of continued medical benefits to an employee in the context of unemployment compensation litigation was judicially recognized in Mason v. Bd. of Review, No. CA-7980, 1990 WL29311 (Ohio Ct. App. March 19, 1990). Mason involved a claim by ten former employees of TRW, Inc., which sold its corporate business to a successor company. Employees aged fifty-five and older were given the option of working for the successor or taking early retirement from their original employer. These who retired would receive a retirement benefit package that included payment by their former employer of seventy-five percent of the cost of health insurance for retirees and their dependents. Those who chose employment with the successor corporation would be ineligible for the former employer's health insurance benefits upon retirement.
The claimants in Mason chose early retirement in order to preserve their health insurance and applied for unemployment benefits because they were involuntarily unemployed. The Board of Review disqualified the claimants, the decision was affirmed by the trial court, but was reversed on appeal.
Although the Ohio Court of Appeals was called upon to render its decision under another statutory provision dealing with an employee's refusal of alternative suitable work, it premised its decision upon its conclusion, that in no sense is a loss of a health benefit package an insignificant factor for a person aged fifty-five or older.
We cannot conclude, however, on the record presented in this case, that Trupo's expressed subjective fear was based upon definitive objective facts. Trupo presented no facts to buttress her belief that her job would actually be eliminated in the impending work reduction. Additionally, Trupo presented no medical information which might establish that she is uninsurable, nor has she offered any financial information to demonstrate that the actual cost of independently purchased medical insurance would in her case be financially prohibitive. She has articulated that she is *62 the head of the household, yet has offered no evidence as to her definition of "head of household".
The Appeal Tribunal decision which was affirmed by the Board of Review did not consider any of the reasons expressed by Trupo which led to her decision to accept the early retirement proposal. Although we perceive Trupo's decision as subjectively prudent and based upon common sense, we cannot conclude, based upon an absence of objective proof in the record, that the disqualification decision was reversible as a matter of law.
The decision of the appeal tribunal and the Board of Review as to unemployment compensation claims must be fact sensitive and predicated upon the particular status of the individual claimant. We recognize that we could, in this instance, remand these proceedings to the Division of Unemployment and Disability Insurance for further amplification of the record. However, the conclusion we have reached respecting the second issue raised in this appeal requires us to reject that alternative.
As noted preliminarily, Trupo has appealed the determination that her weekly compensation rate is zero.
It is undisputed that in the event of a layoff from her employment, Trupo would have been entitled to unemployment compensation of $185 per week.
As a result of her acceptance of the retirement package, Trupo was entitled to receive as her employee pension $234.80 per month and would also receive $700 per month paid by her employer as part of the early retirement benefit package, or $934.80 per month, which is the equivalent to $215.72 per week. As the pension sum ($215.72) exceeded her weekly compensation rate ($185), the rate was reduced to zero by the Division of Unemployment and Disability.
N.J.S.A. 43:21-5a provides:
The amount of benefits payable to an individual for any week which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or other similar periodic payment *63 which is based on the previous work of such individual shall be reduced, but not below zero, by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week; provided that ... the Commissioner of Labor may prescribe in regulations ... [that]:
b. The amount of any such reduction shall be determined taking into account contributions made by the individual for the pension, retirement or retired pay, annuity or other similar periodic payment.
Pursuant to that statute, N.J.A.C. 12:17-11.2(a)(1) was enacted by the Commission of Labor and provides that, for those claimants who have not contributed to a pension, retirement or annuity program under which they are receiving payments, "the amount of benefits payable to such individual ... will be reduced by an amount equal to the amount of such pension, retirement or retired pay, annuity or other payment which is reasonably attributable to such week...."
As indicated, the monthly payment of $700 paid by Trupo's employer was deemed a retirement payment by the Board of Review. That decision was correct and is consistent with the plain meaning of the statute, N.J.S.A. 43:21-5a, the regulation of N.J.A.C. 12:17-11.2(a)(1), and our prior decision in Schuenemann v. Board of Review, 208 N.J. Super. 48, 504 A.2d 1204 (App.Div. 1986).
Based upon this mathematical analysis, it is apparent that a reversal on remand of Trupo's disqualification claim, will yield, if successful, no economic benefit to Trupo in this particular case.
Thus, the decision of the Board of Review must be affirmed.
NOTES
[1] We note the concept of "ordinary common sense and prudence has been utilized in Pennsylvania in applying its analogous statute, 43 P.S. § 802(b)(1). Aluminum Co. of America v. Unemployment Compensation Bd. of Review, 15 Pa.Cmwlth. 78, 324 A.2d 854-57 (1974); Zinman v. Unemployment Compensation Bd. of Review, 8 Pa.Cmwlth. 649, 305 A.2d 380 (1973).