712 A.2d 688 (1998)
313 N.J. Super. 37
Kimberly A. GERBER (Golden), Claimant-Appellant,
v.
BOARD OF REVIEW, Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted May 6, 1998.
Decided June 24, 1998.
*689 Kimberly A. Golden, appellant pro se.
Peter Verniero, Attorney General, for the Board of Review (Mary C. Jacobson, Assistant Attorney General, of counsel; Alan C. Stephens, Deputy Attorney General, on the brief).
Before Judges KING, MUIR, Jr. and KESTIN.
The opinion of the court was delivered by KESTIN, J.A.D.
Claimant appeals from a decision of the Board of Review denying her claim for unemployment benefits. In reaching its result, the Board adopted a decision of the Appeal Tribunal which held that claimant was disqualified for benefits because she had left work voluntarily without good cause attributable to the work. N.J.S.A. 43:21-5(a). We are in substantial agreement with the Board's conclusion that claimant's allegations of stress on the job were not adequate as a compelling reason for leaving the job, and were, in any event, not sufficiently established. When claimant failed to support her allegation of job-related stress with medical documentation, the Board was well warranted in concluding that she had not satisfied the statutory "good cause attributable to [the] work" requirement in that connection. Nevertheless, the record suggests that the employer prevented claimant from beginning a new job which she had obtained before leaving the subject employment. We hold in the circumstances presented, if it is established to the agency's satisfaction that claimant's unemployed status was the direct result of the employer's conduct rather than claimant's own choice, that, as a matter of law, the unemployment must be seen to be attributable to the work as contemplated by the Unemployment Compensation Act (the Act), and claimant is eligible for benefits thereunder.
Claimant was employed by Allied Physicians Billing & Management Resources (Allied), where she worked as an account service representative. Claimant left Allied's employ on August 8, 1996, after finding other employment with Pinelands OB/GYN (Pinelands) which was to commence on August 19, 1996. According to claimant, she left Allied because of job-related stress, induced primarily by various conflicts with her supervisor, Peg Bofsord. Claimant alleged that Bofsord criticized her in front of other employees, causing her unnecessary humiliation, and assigned claimant to assist other employees in their tasks, which led her to fall behind in her own work. On August 16, three days before she was scheduled to begin work at Pinelands, claimant was notified that Pinelands had withdrawn its offer of a position because Allied had threatened a lawsuit should Pinelands employ her. Allied's conduct in this regard was verified by its representative who testified in the hearing before the Appeal Tribunal. Allied had taken the position that Pinelands was bound by its agreement as a former client of Allied not to hire any Allied employee for two years following the employee's separation from Allied. The validity of any such agreement is not at issue in this proceeding, and the record is silent as to whether claimant and Allied were parties to an employment contract with a restrictive covenant.
The finding that claimant's working conditions were not so onerous as to constitute "good cause attributable to [the] work" is sufficiently supported by credible evidence in the record to require our deference. Self v. Board of Review, 91 N.J. 453, 459, 453 A.2d 170 (1982) ("If the factual findings of an administrative agency are supported by sufficient credible evidence, courts are *690 obliged to accept them"); Close v. Kordulak Bros., 44 N.J. 589, 598-99, 210 A.2d 753 (1965). See also Brady v. Board of Review, 152 N.J. 197, 210-11, 704 A.2d 547 (1997) (describing "limited" standard of review of administrative agency decisions). Deference to agency determinations is especially appropriate where the agency's decision is informed by its subject matter expertise in the area delegated by the Legislature. See Close v. Kordulak, supra, 44 N.J. at 599, 210 A.2d 753 (stating that courts should give "due regard" to agency expertise "where such expertise is a pertinent factor"); Brady v. Board of Review, supra, 152 N.J. at 210, 704 A.2d 547 (noting that appellate courts must defer to agency "expertise and superior knowledge of a particular field") (citing Greenwood v. State Police Training Ctr., 127 N.J. 500, 513, 606 A.2d 336 (1992)).
The on-the-job reprimands administered to claimant by her supervisor, Bofsord, while public and arguably improper and humiliating, were not so burdensome as to justify claimant's departure from the job. Cf. Goebelbecker v. State, 53 N.J.Super. 53, 59, 146 A.2d 488 (App.Div.1958). Moreover, claimant had discussed her problems concerning Bofsord with Belinda Manix, Bofsord's supervisor. Manix had instructed Bofsord that any future reprimands with regard to claimant's work should occur in private, and she arranged for Bofsord to attend a supervisor training seminar. Furthermore, although claimant complained of severe stress because of conditions on the job, which allegedly induced physical symptoms and led to her physician prescribing antidepressant medication, no medical documentation was presented to establish either the nature and quality of the stress or its causal connection with job conditions. Thus, if the question as to claimant's eligibility for benefits were to be limited to the facts surrounding her departure from Allied, the Board of Review's determination that claimant left the employment without good cause attributable to the work would command our deference as amply supported by the record with due regard for the Board's expertise.
An alternative ground of eligibility presented by claimant was unaddressed by the agency, however. The Attorney General argues on behalf of the Board's decision:
Undoubtedly, it served no useful purpose under the circumstances for Gerber to resign and join the ranks of the unemployed, trading fair compensation from employment for no compensation at all. Despite indicating that she wanted to work things out with her employer, she resigned suddenly, demonstrating that she did not try hard enough to remain employed. Plainly, "to allow [Gerber] to recover [benefits] would subvert the express policy of providing aid to those who are unemployed `through no fault of their own.'" * * * The Unemployment Benefit Program was not intended to pay benefits in these circumstances.
Rather, the Unemployment Compensation Law is designed to "encourage persons to work," ... and unemployment benefits are not payable to those who "would prefer benefits to suitable jobs." * * * Gerber "left work at a time when her employer had work for her," and she did not "do what was necessary and reasonable in order to remain employed." * * * It would be contrary to the purpose of the Unemployment Compensation Law to grant benefits to Gerber after she resigned from her job without good cause attributable to the work within the meaning of N.J.S.A. 43:21-5(a). (Citations omitted.)
By suggesting that claimant voluntarily "join[ed] the ranks of the unemployed," "that she did not try hard enough to remain employed," and that she did not "do what was necessary and reasonable in order to remain employed[,]" this argument emphasizes different facts than claimant relies upon. It is claimant's position in a two-part alternative argument that, based upon the totality of facts, a determination of claimant's entitlement to unemployment benefits cannot rest alone on whether her "quit" from Allied was voluntary or involuntary. She argues that she did not become unemployed by reason of her own conduct or because of the vicissitudes of the working world. Rather, she stresses, she made careful arrangements to continue to be employed in a better job, for which she was hired, and only because of *691 Allied's deliberate action in asserting its legal claims against the new employer, her replacement job fell through. Allied's conduct transforms claimant's situation from a run-of-the-mill voluntary quit case to one calling for reexamination of the fundamental principles of our Unemployment Compensation Act, and the meaning of the statutory language, "attributable to [the] work" in N.J.S.A. 43:21-5(a).
N.J.S.A. 43:21-2 declares the purpose of the Act to be protection against "economic insecurity due to [involuntary] unemployment" by "lighten[ing] the burden which now so often falls with crushing force upon the unemployed worker and his family." As remedial legislation, it is to be liberally construed. Brady, supra, 152 N.J. at 212, 704 A.2d 547. However, denial of benefits in appropriate cases also advances the purposes of the Act by preserving the compensation fund "against claims by those not intended to share in its benefits." Ibid.
Before the Act was amended in 1961, the statutory standard permitted benefits to those who left work simply "for good cause." Yardville Supply Co. v. Board of Review, 114 N.J. 371, 374, 554 A.2d 1337 (1989). Under that unqualified test, "good cause" might include purely personal reasons, including "the pressure of circumstances which may reasonably be viewed as having compelled [an employee to leave work]." Self, supra, 91 N.J. at 456, 453 A.2d 170 (citing Krauss v. A. & M. Karagheusian, Inc., 13 N.J. 447, 464, 100 A.2d 277 (1953)). The 1961 amendment changed the standard to "good cause attributable to [the] work", N.J.S.A. 43:21-5(a), which had the effect of disqualifying those claimants who had left work for personal, even if good, reasons. White v. Board of Review, 146 N.J.Super. 268, 270, 369 A.2d 937 (App.Div.1977).
Claimant argues that she left Allied for a better position elsewhere, and that this constituted "good cause attributable to [the] work" pursuant to the dictates of N.J.S.A. 43:21-5(a) when the new job failed to materialize. Rider College v. Board of Review, 167 N.J.Super. 42, 400 A.2d 505 (App.Div.1979), is the precedent cited in this regard. In that case, the court acknowledged: "[T]here may be situations where a voluntary quit to take a better position because of factors related to the work would constitute good cause attributable to the work[.]" Id. at 47, 400 A.2d 505. This view has been applied in New Jersey to validate a claim by one who left a part-time job to accept full-time employment. See Matter of A.F., 92 N.J.A.R.2d 7 (N.J.Adm. Oct. 28, 1991). See generally Emmanuel S. Tipon, Annotation, Unemployment Compensation: Leaving Employment in Pursuit of Other Employment as Affecting Right to Unemployment Compensation, 46 A.L.R.5th 659 § 2[b], at 680 (1997) ("[C]laimants who established that they left a temporary job for a better paying job have generally been successful in obtaining benefits on the ground that their reason for leaving the temporary job was connected with the employment or attributable to the employer.")
The view articulated in Rider was expressly qualified by a caveat, however: "the burden of proving that the voluntary separation from employment meets the statutory test is upon the claimant." Rider, supra, 167 N.J.Super. at 47, 400 A.2d 505. As we have already indicated, concentrating on claimant's reasons for her voluntary separation from employment with Alliedher relational difficulties on the jobshe has not met the burden.
The unique aspect of this case, which was not considered by the agency, bears upon the second part of claimant's alternative argument and entails a different focus, however: what was the direct cause of claimant's status as an unemployed person when she filed her claim? With this view of the matter, the question is whether Allied's purposeful act its assertion of contractual rights against Pinelands, which caused Pinelands to withdraw its offer of employment from claimantconstitutes "good cause attributable to [the] work" pursuant to N.J.S.A. 43:21-5(a) for claimant having joined the ranks of the unemployed.
Self, supra, 91 N.J. 453, 453 A.2d 170, is considered "the leading case to address the issue of what constitutes a voluntary quit under N.J.S.A. 43:21-5(a)." Yardville, supra, 114 N.J. at 375, 554 A.2d 1337. Self held that workers unable to work because of *692 transportation difficulties had not left their employment for "good cause." Self, 91 N.J. at 457, 453 A.2d 170. There, the claimants had lost their transportation to work because a fellow employee, who had previously provided them with the transportation, had quit. The court was careful to distinguish that situation from a scenario in which the employer makes a change in its operations which increases the employees' commuting distance. Id. at 460, 453 A.2d 170. The Self court reasoned that the transportation problem of the employees in the actual case was not, under the terms of the statute, attributable to the employment. Ibid. The critical element was that the employer had done nothing to bring about the employees' problems, such as requiring them to work at a more distant facility. Ibid.
The concept of fault was likewise confronted in Yardville, supra, 114 N.J. 371, 554 A.2d 1337, which concerned unemployment benefits for a truck driver who had lost his driver's license because of a drunk-driving incident which was not job-related. As a result of the loss of license, the truck driver had lost his job. The Yardville court observed: "[The employer] had no control over [claimant's] reckless decision to gamble his driver's license. It would be unfair to make [the employer] bear the economic cost of [claimant's] misconduct." Id. at 375, 554 A.2d 1337. To permit claimant to receive benefits, the Court added, would "subvert" the policy underlying the Act, which is to aid those "unemployed `through no fault or act of [their] own.'" Ibid. (citing Schock v. Board of Review, 89 N.J.Super. 118, 125, 214 A.2d 40 (App.Div.1965), aff'd, 48 N.J. 121, 223 A.2d 633 (1966)). Most recently, in Casciano v. Board of Review, 300 N.J.Super. 570, 693 A.2d 531 (App.Div.1997), we employed a rationale based on public policy to vindicate the claimant's refusal to cooperate with his former employer's illegal activity, and essentially invoked the concept of fault as the basis for a determination of "good cause attributable to [the] work[,]" id. at 577, 693 A.2d 531, albeit in a somewhat different context.
The Attorney General argues that Allied's threat to sue Pinelands has no relevance here. Yet the facts, along with a close reading of Yardville and Self, interpreted in the light of the purposes behind the Unemployment Compensation Act, suggest otherwise. Crediting claimant's allegations, after she left her job with Allied she was not unemployed, because she had secured another job. She "joined the ranks of the unemployed" through no fault of her own, but rather because of the deliberate actions of her employer designed to eliminate her new job opportunity. Focusing on Allied's conduct, the reasons for claimant's status as an unemployed individual were not purely personal to her, as with the employees in Self, who had lost their transportation to work for reasons not attributable to the employer. Here, the conduct which caused claimant's unemployed status, i.e., the unavailability of claimant's replacement job secured before she left Allied, was that of Allied itself. This is more akin to the hypothetical situation described in Self as potentially leading to a different result, i.e., the employer moving the place of employment further away from the claimants.
As to whether, in terms used by the court in Yardville, it is fair to require the employer to bear the economic cost of a claimant's unemployment, we are constrained to note that this claimant engaged in no misconduct. She was unhappy with her work situation, and she found herself another job. She alleges she did nothing to place herself in the ranks of the unemployed, as the Attorney General argues. To the contrary, she took reasonableand successful, until the employer intervenedsteps to assure that she would remain employed with no significant hiatus between jobs. Claimant's actions were neither foolish nor blameworthy in any way, as had been those of the Yardville claimant. Nevertheless, had claimant's new job failed to materialize by an accident of fate in no way attributable to Allied, she would have had to bear the risk, because her reasons for being out of work would have been "personal" in the final analysis under existing case law. However, it appears that Pinelands rescinded its offer of employment only because of Allied's intervention. This was no fortuitous occurrence resulting from a neutral act. Allied did more than make a general decision which rendered claimant's *693 status as an employed person more difficult to maintain, such as moving its offices to a distant location, which Self suggested would qualify as a "condition attributable to the work rather than the employee." Self, supra, 91 N.J. at 459, 453 A.2d 170. Allied's conduct was specifically directed against claimant; it destroyed her future employment opportunity through a threat to the new employer.
The test to be applied in determining "good cause" under the Act is one of "ordinary common sense and prudence." Brady, supra, 152 N.J. at 214, 704 A.2d 547 (citing Zielenski v. Board of Review, 85 N.J.Super. 46, 52, 203 A.2d 635 (App.Div.1964)). It appears that claimant did not voluntarily join the ranks of the unemployed; nor is her status as an unemployed person likely to have been the result, in any proximately causal sense, of any choice she made to seek new employment or of any conduct attributable to her. It appears that claimant is unemployed solely because of the direct action her erstwhile employer took that caused her to lose her job. These are factual issues which the agency may view as requiring further development. For the purposes of claimant's rights to unemployment compensation, it is of no consequence whether or not the former employer acted validly or reasonably to vindicate claimed contractual rights it may have had vis a vis the new employer. Especially in the absence of a restrictive covenant to which claimant herself was a party, the unilateral action of the employer cannot be seen to be in any way attributable to claimant for unemployment compensation eligibility purposes. The facts of this case are unusual. We regard the principle we have developed in an effort to achieve substantial justice within the framework of the Unemployment Compensation Act, to have limited application.
The record before us leaves unresolved the question whether claimant would have left her job with Allied in any event, even without securing a replacement job. If that is found to be a substantial likelihood, then claimant's status as an unemployed person may be viewed to be attributable to her own choice rather than to the conduct of the employer. This is also an issue of fact subject to agency determination.
The Board of Review's order denying benefits is reversed. Because of our regard for the agency's authority over its own processes as well as the potential need for further factual development, and in light of the fact that the dispositive issue was unaddressed on the agency level, we remand for such determinations of fact as may be seen to be necessary within the bounds of the principle we have indicated should be applied.
Reversed and remanded.