**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2501-24

SANG KIM,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and T-MOBILE USA, INC.,

     Respondents.

_____

Submitted February 3, 2026 – Decided February 25, 2026

Before Judges Perez Friscia and Vinci.

On appeal from the Board of Review, Division of Unemployment Insurance, Department of Labor and Workforce Development, Docket No. 332569.

Sang Kim, self-represented appellant.

Jennifer Davenport, Acting Attorney General, attorney for respondent Board of Review (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Kevin K.O. Sangster, Deputy Attorney General, on the brief).

PER CURIAM

Claimant Sang Kim appeals from a January 31, 2025 final agency decision of the Board of Review (Board), which determined Kim is disqualified for unemployment benefits because he left work voluntarily without good cause attributable to the work. We affirm.

I.

Kim was employed as a sales account executive for T-Mobile USA, Inc. (T-Mobile) from February 22, 2021, until February 3, 2022, when he resigned. Kim subsequently applied for unemployment benefits. On January 13, 2023, a Deputy of the Division of Unemployment Insurance (Deputy) determined Kim was not eligible for unemployment benefits because he left work voluntarily without good cause attributable to such work and was disqualified for benefits pursuant to N.J.S.A. 43:21-5(a).

Kim appealed the Deputy's determination to the Appeal Tribunal (Tribunal), which conducted a telephonic hearing on January 22, 2024. Kim and a representative of T-Mobile, Larry Kiel, testified at the hearing.

Kim testified he "had been working in a toxic environment for quite some time" and "[t]he leadership" at T-Mobile "made every effort to make [his] presence there uncomfortable." Kim never reported his concerns to T-Mobile's human resources (HR) department because "the bulk of this occurred towards

A-2501-24

the end of the year [i]n 2021, right before the new year" and he is "no HR basket case."  He is "not somebody who rocks the boat" and "did[ not] think this was HR worthy."  "This was[ not] . . . some sort of . . . prejudice or anything like that.  It was just simply, [he] knew they were ganging up on [him], but there[ was] . . . nothing [he] could prove."

Kim conceded his "performance . . . was lacking," which he attributed to "the territory [he] worked."  It, "for lack of a better word[,] . . . was a pretty crappy territory."  Kim "could have easily taken the path of least resistance and allowed them to fire [him] and let [him] go, but [he] had no desire to do that."  Kim admitted he was warned that he was not meeting his sales quotas, and "still had some time to improve [his] sales quotas . . . at the time that [he] quit."

Kim testified Kiel, who had only been his manager for one week when he resigned, "suggested [he] resign" because Kim "[did not] want it on [his] record" and "they[ were] going to let [him] go."  Kim had "never been fired from anywhere in [his twenty-]plus years out in the workforce.  And [he] was[ not] about to start with this organization."  Kim was "not going to give them the satisfaction" and was "going to resign."  He "sent [Kiel his] email and that was it."  He "left quietly."  He "did[ not] stir up anything, [he] did[ not] rock the boat."

3

Kiel testified that he had only been Kim's supervisor "for one day when he . . . resigned" and Kim never discussed his resignation with him. Kiel did recall "having a discussion with [Kim] when [he] took the role over [about] where he stood as far as his position in the company." Kim was on a "performance enhancing plan [(PEP)] that T-Mobile has in place." Kim's PEP began on November 1, 2021, and was set to end on March 1, 2022.

Kiel testified "[Kim] had just finished month three of the four months of that plan. So, [he] did let [Kim] know that he did have a month to straighten himself out. And obviously, if he [did not] straighten himself at that point . . . most people . . . would[ be] let go after that, which is just company policy." Kim "still had a full month . . . that he could have straightened himself out" and he "did[ not] take advantage of" that. Kim resigned on February 3, 2022. At the time Kim resigned, there was still work available to him because "his territory was still assigned to him" and he could "have continued working had he chosen to do so."

In a decision dated January 24, 2024, the Tribunal determined Kim "did not leave the job voluntarily" and reversed the determination of the Deputy. The Tribunal found Kiel "provided [Kim] with the option of resigning in lieu of an imminent discharge" and Kim "opted to involuntarily resign . . . to protect his

4

employment record." It found T-Mobile's "conten[tion] that they never discharged" Kim "lack[ed] credibility" because "[i]t is difficult to fathom that [Kim] would abandon the job during a discussion pertaining to job performance." The Tribunal noted Kim "provided consistent testimony that he was involuntarily separated due to an imminent discharge."

In a final decision dated January 31, 2025, the Board reversed the Tribunal and determined Kim is disqualified for unemployment benefits because he "quit the work without good cause attributable to the work." The Board "disagree[d] with [the Tribunal's] credibility judg[]ment" based on the "undisputed testimony from both parties that [Kim] resigned via a resignation letter submitted to" Kiel. The Board found:

> When placed on a [PEP], the employer is giving the employee an opportunity to improve. Although [Kim] blamed his failure to meet his quota on matters that he felt were not in his control, there is no evidence that he attempted to resolve his issues prior to leaving. The option to remain employed or resign rested with [Kim] who chose to resign before attempting to improve his performance. Continuing work was available to [Kim] at the time of his resignation. His decision to leave because the work environment was toxic under the leadership of his former manager was not supported by credible evidence as he was under new supervision at the time of his separation. As [Kim] has not demonstrated that the working conditions were so abnormal or adversely affected his health, he is disqualified for benefits for leaving work voluntarily

without good cause attributable to the work under N.J.S.A. 43:21-5(a).

This appeal followed.

II.

On appeal, Kim contends the Board's "failure to issue payment after a reversal constitutes an abuse of discretion and undermines the appeals process." Specifically, he argues "[t]he Tribunal reversed the [Deputy's] denial, effectively granting [his] claim" and "[d]espite the reversal . . . the [Board] withheld payment." He claims "[t]his approach subverts the intent of the appeal process by effectively denying the claimant the benefit of [a] successful appeal." Kim also argues the "failure to promptly issue benefits after reversal, combined with inconsistent and inaccurate directions regarding certification and verification requirements, unreasonably delayed payment." We are not persuaded.

An appellate court's review of an administrative agency decision is narrow. Sullivan v. Bd. of Rev., Dep't of Lab., 471 N.J. Super. 147, 155 (App. Div. 2022). In matters involving unemployment benefits, appellate courts afford deference to the Board's expertise in administrating the Unemployment Compensation Law (UCL), N.J.S.A. 43:21-1 to -71. Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997). Consequently, a reviewing court will not reverse an

6

agency's decision unless it is "arbitrary, capricious, or unreasonable or . . . not supported by substantial credible evidence in the record." In re Ambroise, 258 N.J. 180, 197 (2024) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).

Under the UCL, employees who resign from their jobs are not eligible for unemployment benefits unless they establish that they resigned for "good cause attributable to" the work. N.J.S.A. 43:21-5(a). When determining whether "good cause" exists, "courts have construed the phrase to mean 'cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed.'" Brady, 152 N.J. at 214 (quoting Domenico v. Bd. of Rev., Dep't of Lab. & Indus., 192 N.J. Super. 284, 287 (App. Div. 1983)).

An employee who resigns bears the burden of showing he or she did so with good cause. N.J.A.C. 12:17-9.1(c). The test for determining whether good cause is shown is one of "ordinary common sense and prudence." Brady, 152 N.J. at 214 (quoting Zielenski v. Bd. of Rev., 85 N.J. Super. 46, 52 (App. Div. 1964)). The employee's decision to leave work "must be compelled by real, substantial[,] and reasonable circumstances[,] not imaginary, trifling and whimsical ones." Ibid. (quoting Domenico, 192 N.J. Super. at 288). In other

A-2501-24

words, the employee's reason for quitting must be "so compelling as to give [him or her] no choice but to leave the employment." N.J.A.C. 12:17-9.1(b).

Having carefully reviewed the record, we are convinced there is no basis to disturb the Board's decision. The record supports the Board's findings that Kim had one month remaining on his PEP and still had the opportunity to improve his performance as required by his employer when he resigned. Kim voluntarily elected to resign rather than continue to do the work that was available to him and attempt to meet his sales goals. The Board's determination that Kim is disqualified for benefits because he left his job voluntarily without good cause attributable to the work was based on ample findings supported by substantial credible evidence in the record and was not arbitrary, capricious, or unreasonable.

We therefore conclude the Board's decision is supported by sufficient credible evidence on the record as a whole. R. 2:11-3(e)(1)(D). To the extent we have not otherwise addressed Kim's arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2501-24