**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0392-23

JOETTE FENWICK,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,[1]
and FETCH PET CARE
NWBC, INC.,

     Respondents.

_____

Submitted February 26, 2025 – Decided March 7, 2025

Before Judges Mayer and DeAlmeida.

On appeal from the Board of Review, Department of Labor and Workforce Development, Docket No. 272621.

Pearce Law, LLC, attorneys for appellant (William R. Fenwick, of counsel and on the briefs).

---

[1] Respondent is now known as the New Jersey Department of Labor and Workforce Development.

Matthew J. Platkin, Attorney General, attorney for respondent Board of Review (Achchana Ranasinghe, Deputy Attorney General, on the brief).

PER CURIAM

Claimant Joette Fenwick appeals from a November 13, 2023 decision by the Board of Review (Board) of the New Jersey Department of Labor and Workforce Development (Department) determining she was liable to repay $5,520 in unemployment benefits improperly received under New Jersey's Unemployment Compensation Law (UCL), N.J.S.A. 43:21-1 to -71, and ineligible for Pandemic Unemployment Assistance (PUA) under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), 15 U.S.C. §§ 9001-9141. We affirm.

From July 2020 to January 2021, Fenwick was employed by Fetch Pet Care (Fetch) as a dog walker and, less frequently, a dog sitter. When Fenwick began working for Fetch, she was a sixty-three-year-old cancer survivor and suffered from "severe neuropathy and arthritis."

On January 3, 2021, Fenwick voluntarily left her job at Fetch because she was "physically unable to do" the required work "due to the cold winter months." About a month later, she filed a claim for unemployment benefits with the

2

Department.  Fenwick received unemployment benefits for the weeks ending February 13, 2021 through September 4, 2021 at a rate of $184 per week.

On October 20, 2021, the Department issued a disqualification notice, advising Fenwick was "disqualified for benefits from [January 3, 2021]" because she "left work voluntarily" on that date.  The disqualification notice further explained Fenwick did not "meet a qualifying reason under the CARES Act" and, therefore, was "also ineligible for PUA."  The notice required Fenwick to refund $5,520 in unemployment benefits paid by the Department in error between February 13, 2021 and September 4, 2021.

Fenwick appealed the Department's denial of benefits.  In her appeal to the Appeal Tribunal (Tribunal), Fenwick stated she was "a cancer survivor with severe neuropathy and arthritis"; physically unable to walk dogs in "the cold winter months"; and "required to come in contact with unvaccinated people who put [her] at a risk of getting [COVID-19] making [her] fearful to continue working at Fetch."

The Tribunal conducted a telephonic hearing on April 7, 2022.  Fenwick, represented by counsel, testified.  When asked by the Tribunal examiner if a doctor advised her not to work during the COVID-19 pandemic because she was

"high risk," Fenwick responded, "No." The Tribunal examiner also asked the following question:

> Examiner: Are you saying your doctor never gave you any advice about if you could just work at all or this type of work?
>
> Fenwick: Well, my . . . one doctor wasn't thrilled about me walking dogs because of my balance. But, you know, he just kind of said, if you're . . . comfortable doing it, then just be careful. I mean, he never officially said don't walk dogs, you know. But it was more that I was fearful of falling and breaking something.

Fenwick testified her doctor never told her to avoid work that might require her to "come in contact with people." She also stated she "slipped on slippery surfaces while . . . walking dogs, but never fell." Additionally, Fenwick told the Tribunal examiner that walking dogs "was not mandatory[, b]ut if [she] wanted to make any money, which is why [she] took the job, [she] had to walk dogs." Further, Fenwick explained she worked as a dog sitter for Fetch but dog sitting jobs decreased during the COVID-19 pandemic. Fenwick also told the Tribunal examiner she was owed more than $9,000 in connection with a separate unemployment benefit claim from a job before she worked for Fetch.[2]

---

[2] Fenwick's claimed entitlement to unemployment benefits in connection with her employment prior to working at Fetch is not a part of this appeal.

In an April 11, 2022 decision, the Tribunal affirmed the Department's determination that Fenwick was disqualified from receiving unemployment benefits as of January 3, 2021, because "she left work voluntarily without good cause attributable to such work." The Tribunal also affirmed the Department's determination Fenwick was ineligible for PUA benefits because her "unemployment was not due to one of the COVID-19 related reasons" identified under the CARES Act. Additionally, the Tribunal upheld the Department's decision compelling Fenwick to refund the $5,520 in benefits she received in error.

Citing N.J.A.C. 12:17-9.3, the Tribunal reasoned:

> In this case, [Fenwick] left work due to non-work[-] related medical impairments that during the natural aging process . . . left her unable to perform her job. In addition[,] a medical professional did not advise [Fenwick] to leave the job due to COVID-19 related concerns. Thus, [Fenwick] left the job without good cause attributable to the work and is disqualified for regular benefits from [January 3, 2021] as provided by N.J.S.A. 43:21-5(a).

Additionally, the Tribunal cited N.J.S.A. 43:21-16(d), which allows "for the recovery of benefits paid to an individual who, for any reason, has received benefits to which he [or she] was not entitled."

5

Fenwick appealed the Tribunal's decision to the Board. In that appeal, Fenwick explained she quit her job at Fetch because of her "cancer[-]derived symptoms."

In an August 23, 2023 decision, the Board affirmed the Tribunal's determinations. The Board found Fenwick's "argument that she should not have been disqualified for benefits because she left work because the work aggravated her medical condition[,] which did not have a work[-]connected origin, [was] unsupported by the record and without merit." The Board reasoned:

> There is no evidence that the work aggravated [Fenwick]'s pre-existing medical condition. Therefore, the first part of the rule is inapplicable. [Fenwick]'s testimony firmly established that she could not perform her job because she feared being seriously injured were she to fall on ice or a slippery surface while walking dogs. [Fenwick] testified she could no longer perform her job as a dog walker because it was too dangerous. Thus, the second part of the rule applies requiring a benefit disqualification.

Regarding Fenwick's argument that she voluntarily left her job at Fetch due to unsafe working conditions consistent with N.J.A.C. 12:17-9.4, the Board found:

> Dog walkers, like mail carriers and other workers whose jobs require walking[,] are expected to encounter potentially dangerous conditions such as ice, snow or mud. Such workers are expected to successfully traverse such conditions in order to perform the work.

6

> Here, [Fenwick] did not leave work due to an unsafe condition. Rather, she left work because she was simply unable to perform the work on slippery surfaces, which was not an abnormal work environment and indeed part of the job.

The Board also found Fenwick ineligible for PUA as "an individual who le[ft] work due to general concerns about exposure to COVID-19, and who d[id] not meet any of the other COVID-related criteria for PUA."

On appeal, Fenwick contends the Board erroneously denied her unemployment benefits because she had no choice but to voluntarily leave her job at Fetch on January 3, 2021. She argues the Board erred by: (1) finding her ineligible for benefits under N.J.A.C. 12:17-9.3(b) when her dog walking job exacerbated her preexisting neuropathy and N.J.A.C. 12:17-9.4 when she was required to interact with Fetch clients who did not wear face masks during the COVID-19 pandemic; (2) denying her PUA benefits based on guidance in a rescinded Unemployment Insurance Program Letter (UIPL); and (3) requiring her to refund $5,520 to the Department when the benefits she incorrectly received were the result of an error by the Department and she was owed money on an earlier and separate unemployment claim.

A-0392-23

# I.

Our review of an agency decision is limited. D.C. v. Div. of Med. Assistance & Health Servs., 464 N.J. Super. 343, 352 (App. Div. 2020). "[W]e will disturb an agency's adjudicatory decision only upon a finding that the decision is 'arbitrary, capricious or unreasonable,' or is unsupported 'by substantial credible evidence in the record as a whole.'" Sullivan v. Bd. of Rev., Dep't of Lab., 471 N.J. Super. 147, 155-56 (App. Div. 2020) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). "We review a decision made by an administrative agency entrusted to apply and enforce a statutory scheme under an enhanced deferential standard." E. Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022). The burden to demonstrate an agency's abuse of discretion "is on the challenger." Parsells v. Bd. of Educ. of Somerville, 472 N.J. Super. 369, 376 (App. Div. 2022).

"[I]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)). Additionally, we afford "[w]ide discretion

8

. . . to administrative decisions because of an agency's specialized knowledge." In re Request to Modify Prison Sentences, 252 N.J. 357, 390 (2020).

On review, we "defer to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is plainly unreasonable." Ardan v. Bd. of Rev., 231 N.J. 589, 604 (2018) (quoting In re Election L. Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). We review agency determinations with an "understanding that a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." Ibid.

## II.

We first consider Fenwick's argument she was entitled to unemployment benefits under N.J.A.C. 12:17-9.3(b) due to an aggravation of her medical condition and N.J.A.C. 12:17-9.4 because her job at Fetch posed unsafe, unhealthy, or dangerous work conditions. We disagree.

The UCL provides an individual shall be disqualified from receiving unemployment benefits:

> For the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works eight weeks in

A-0392-23

employment . . . and has earned in employment at least [ten] times the individual's weekly benefit rate, as determined in each case.

[N.J.S.A. 43:21-5(a).]

Department regulations define "good cause attributable to such work" as "a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment." N.J.A.C. 12:17-9.1(b).  Courts have interpreted "good cause" to mean "cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed."  Brady, 152 N.J. at 214 (quoting Domenico v. Bd. of Rev., 192 N.J. Super. 284, 287 (App. Div. 1983)).  The claimant bears the burden of proving "good cause attributable to such work." N.J.A.C. 12:17-9.1(c).

The Department's regulations delineate certain exceptions to the "without good cause attributable to such work" disqualification for receipt of unemployment benefits.  Fenwick claims she qualifies for unemployment benefits under the exceptions set forth in N.J.A.C. 12:17-9.3(b) and N.J.A.C. 12:17-9.4.

A.  N.J.A.C. 12:17-9.3(b).

Fenwick argues she is entitled to receipt of unemployment benefits after resigning from Fetch because the work aggravated a preexisting medical condition.  She asserts "her cancer[-]derived neuropathy was aggravated by the cold working conditions she was exposed to and that no other work was available from Fetch."  As a result, Fenwick contends the Board's denial of unemployment benefits was arbitrary, capricious and unreasonable.

N.J.A.C. 12:17-9.3(b) states:

> An individual who leaves a job due to a physical and/or mental condition or state of health which does not have a work-connected origin but is aggravated by working conditions will not be disqualified for benefits for voluntarily leaving work without good cause "attributable to such work," provided there was no other suitable work available which the individual could have performed within the limits of the disability.  When a non-work connected physical and/or mental condition makes it necessary for an individual to leave work due to an inability to perform the job, the individual shall be disqualified for benefits for voluntarily leaving work.

Here, Fenwick never testified "[her] severe neuropathy . . . w[as] worsened by her being forced by her employer to walk dogs in the cold winter months."  Rather, she told the Tribunal examiner how preexisting neuropathy

11

and arthritis affected her ability to perform her dog walking job. During the Tribunal hearing, Fenwick testified:

> I have really bad balance because of the neuropathy and the arthritis, and I was afraid of falling on the ice while I was . . . walking dogs. Some dogs can be pretty . . . strong. And I didn't always have a choice if I could work [with] a small dog or a large dog[]. So, I was afraid of falling and injuring myself, which I've done in the past. I've fallen on the ice, and I just thought it was too dangerous for me to continue that job during the bad weather.

Nor did Fenwick provide the Tribunal any medical documentation showing the work at Fetch aggravated her neuropathy. See <u>Brown v. Bd. of Rev.</u>, 117 N.J. Super. 399, 404 (App. Div. 1971). Fenwick candidly told the Tribunal examiner that her doctor "never officially said don't walk dogs." Rather, Fenwick explained she resigned because she was "very afraid of falling if a dog yanked [her] too hard."

Having reviewed the record, we discern no basis to reverse the Board's decision that Fenwick did not qualify for unemployment benefits under N.J.A.C. 12:17-9.3(b). Fenwick proffered no testimony or evidence that her job at Fetch aggravated her neuropathy or arthritis. Further, there is no evidence Fenwick ever fell while working at Fetch. Rather, Fenwick feared she could fall if she walked dogs during icy weather. Because Fenwick's neuropathy and arthritis

12

were neither caused nor aggravated by her work at Fetch, she was not entitled to unemployment benefits under N.J.A.C. 12:17-9.3(b).

## B.  N.J.A.C. 12:17-9.4.

Fenwick also argues she is entitled to unemployment benefits under N.J.A.C. 12:17-9.4 due to unsafe working conditions.  According to Fenwick, "repeated workplace exposure to unmasked individuals during the [COVID-19] pandemic" constituted an unsafe, unhealthful, or dangerous condition.

N.J.A.C. 12:17-9.4 provides: "An individual shall not be disqualified for benefits for voluntarily leaving work if he or she can establish that working conditions are so unsafe, unhealthful, or dangerous as to constitute good cause attributable to such work."  An employee's "decision to leave employment must be compelled by real, substantial and reasonable circumstances not imaginary, trifling and whimsical ones." Trupo v. Bd. of Rev., 268 N.J. Super. 54, 58 (App. Div. 1993) (quoting Domenico, 192 N.J. Super. at 288).

Here, the Tribunal examiner asked Fenwick if her "doctor advise[d] [her] about work during the pandemic if [she] w[as] high risk at all or should not work?" and she replied, "No."  Rather, Fenwick told the examiner that "because [she] was older, [she] was a little nervous about getting [COVID-19]."  While

A-0392-23

Fenwick wore a mask when she worked at Fetch, she testified about half her human customers did not wear masks.

The record reflects Fenwick worked at Fetch without issue at the height of the COVID-19 pandemic in the summer and fall of 2020. It was only in January 2021, when Fenwick grew concerned that weather conditions coupled with her neuropathy might cause her to fall while walking dogs, that she expressed a fear of contracting COVID-19 from unmasked customers and resigned from Fetch. Nothing in the record reflects Fenwick discussed her concerns about contracting COVID-19 with her manager or supervisor at Fetch. Further, Fenwick never told anyone at Fetch she resigned because she feared contracting COVID-19. Additionally, Fenwick testified before the Tribunal that she never experienced any symptoms or tested positive for COVID-19 and no one in her household did either.

The record demonstrates Fenwick preemptively left her job due to a speculative fear she could encounter a customer who might have COVID-19, might not be wearing a mask, and from whom she might ultimately contract the virus. Fenwick produced no competent evidence demonstrating she qualified for benefits "for voluntarily leaving work" due to "working conditions [that we]re so unsafe, unhealthful, or dangerous as to constitute good cause

A-0392-23

attributable to such work." N.J.A.C. 12:17-9.4. Her conclusory claims about potentially contracting COVID-19 from a job performed outdoors and working alone are insufficient to constitute good cause. See Brown, 117 N.J. Super. at 403-04. Fenwick failed to provide any testimony establishing a causal link between her work at Fetch and the possibility of contracting COVID-19.

On this record, Fenwick is not entitled to benefits because she voluntarily left her job at Fetch on her own accord absent any medical advice to do so. We are satisfied the Board's denial of unemployment benefits was not arbitrary, capricious, or unreasonable and was amply supported by sufficient evidence in the record.

III.

We next address Fenwick's challenge to the Board's denial of PUA benefits. Fenwick relies on 15 U.S.C. § 9021(a)(3)(A)(ii)(I) in support of her claimed entitlement to PUA benefits. We reject this argument.

Under the CARES Act, individuals who did not otherwise qualify for unemployment compensation benefits could receive PUA benefits if they were unemployed due to one of several enumerated COVID-19-related reasons. See 15 U.S.C. § 9021(a)(3)(A)(ii)(I). Qualifying reasons for PUA under Section 9021(a)(3)(A) included: COVID-19 diagnosis or symptoms in the employee or

a household member; quarantine requirements or recommendations by a medical professional; caring for a family or household member diagnosed with COVID-19; closure of the employee's workplace; and "the individual has to quit his or her job as a direct result of COVID-19." Id. at § 9021(a)(3)(A)(ii)(I)(aa) to –(kk).

Here, when Fenwick filed her appeal, the Board found she was not entitled to PUA because she resigned from Fetch "due to general concerns about exposure to COVID-19" and did not otherwise qualify under § 9021(a)(3)(A)(ii)(I). Fenwick contends that because she "specifically left her job due to the unsafe nature of the job forcing her to be[] exposed to unmasked customers during the height of the COVID-19 pandemic, [she] is entitled to PUA benefits pursuant to [§ 9021(a)(3)(A)(ii)(I)]."

Section 9021(a)(3)(A)(ii)(I) applies to "[i]ndividuals who refuse to return to work that is unsafe or accept an offer of new work that is unsafe." See Advisory: Unemployment Insurance Program Letter 16-20, Change 5, (February 25, 2021). Based on the testimony, Fenwick was not refusing to return to work based on COVID-19. Rather, consistent with her testimony, Fenwick quit her job because she was afraid of slipping on ice during the winter weather.

A-0392-23

Further, Fenwick told the Tribunal examiner she was not advised by any medical professional to refrain from working at Fetch due to COVID-19 concerns. To the contrary, Fenwick's doctor advised she could continue working at Fetch if she wanted to do so. On these facts, Fenwick did not qualify for PUA under the CARES Act and we discern nothing incorrect in the Board's decision that Fenwick was ineligible for PUA.

IV.

We next consider Fenwick's argument that she was not required to refund the Department for the $5,520 in unemployment benefits as a result of the Department's error. Alternatively, Fenwick contends she is not required to refund the overpayment because she is owed unemployment benefits by the Department for a separate claim in connection with a different job. According to Fenwick, the $5,520 refund should be offset by unemployment benefit funds she claims to be due to her after leaving her prior job. We reject these arguments.

The UCL in effect when the Board issued its decision provided:

> When it is determined by a representative or representatives designated by the Director of the Division of Unemployment . . . that any person whether (i) by reason of the nondisclosure or misrepresentation by him or by another of a material fact (whether or not such disclosure or misrepresentation was known or

17

fraudulent), or (ii) for any other reason, has received any sum as benefits under this chapter while any conditions for the receipt of benefits imposed by this chapter were not fulfilled in his case, or while he was disqualified from receiving benefits, or while otherwise not entitled to receive such sum as benefits, such person . . . shall be liable to repay those benefits in full.

[N.J.S.A. 43:21-16(d).]

Here, the Department acknowledged the refunded unemployment benefit sum was the result of "an error made by this agency." Under N.J.S.A. 43:21-16(d) as amended on July 13, 2023, Fenwick argues she need not refund the money paid due to the Department's error. The amended statute provides:

The person shall not be liable to repay all or any portion of the overpayment if the representative finds that the person received the overpayment of benefits because of . . . errors by the division, and not because of an error, or knowing, fraudulent nondisclosure or misrepresentation, by the person.

[Ibid.]

However, the amended statute was not in effect when the Department issued its disqualification notice. Under the statute in effect prior to July 13, 2023, Fenwick was responsible for the repayment of mistakenly paid unemployment benefits regardless of whether the Department made an error.

As we held in Fischer v. Board of Review, 123 N.J. Super. 263, 266 (App Div. 1973), a refund is recoverable even if the claimant receives un-entitled

benefits in good faith.  In <u>Fischer</u>, the plaintiff's benefits were terminated after the Department discovered a reporting mistake by her employer.  <u>Id.</u> at 265. Despite the plaintiff bearing no fault for the overpayment, we affirmed the Board's finding the "[p]laintiff was therefore not eligible for benefits . . . and despite her conceded good faith in applying for the benefits she received, she is obligated to refund them."  <u>Id.</u> at 266.

Fenwick filed for unemployment benefits in February 2021 and received benefits to which she was not entitled through September 2021, two years before the adoption of the amended statute.  At the time Fenwick sought unemployment benefits, the statute did not differentiate between funds erroneously received due to an honest error by a claimant or an employer, as opposed to the Department. As such, Fenwick is obligated under the UCL, as it existed when the Department issued its disqualification letter, to refund the $5,520 in overpaid benefits.

Moreover, Fenwick's requested offset for unemployment benefits purportedly owed to her in connection with a separate unemployment claim associated with a prior job is not properly before us.  Fenwick may pursue relief on her earlier unemployment benefit claim in a separate legal action.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

19

A-0392-23