**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1370-19

MARY ANN LYNN,

    Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF
LABOR, and RG
REALTY INVESTORS,
LLC,

    Respondents.

_____

Argued March 24, 2021 – Decided April 22, 2021

Before Judges Fuentes and Firko.

On appeal from the Board of Review, Department of Labor, Docket No. 178,594.

Gerald Jay Resnick argued the cause for appellant (Resnick Law Group, PC, attorneys; Gerald Jay Resnick, on the briefs).

Alexis F. Fedorchak, Deputy Attorney General, argued the cause for respondent Board of Review (Gurbir S. Grewal, Attorney General, attorney; Sookie Bae,

Assistant Attorney General, of counsel; Alexis F. Fedorchak, on the brief).

Aaron C. Schlesinger argued the cause for respondent RG Realty Investors, LLC (Peckar & Abramson, PC, attorneys; Aaron C. Schlesinger, on the brief).

PER CURIAM

Claimant Mary Ann Lynn, a former employee of RG Realty Investors, LLC (RG), appeals from an October 23, 2019 final determination made by the Board of Review (Board) of the New Jersey Department of Labor and Work Force Development, Division of Unemployment and Insurance Services (Department). The Board determined that claimant abandoned her employment with RG and denied her application for unemployment compensation benefits, directing her to refund $5504 she received during her period of ineligibility. We affirm.

I.

The facts taken from the record are summarized as follows. Claimant, age seventy-five, was the property manager for RG for over fifteen years. She was employed on a full-time basis, earning $55,000 annually, plus benefits, and received a free apartment. Claimant reported to Andrew Weissman, RG's regional property manager.

2

In Spring of 2018, RG notified claimant that her work performance was unsatisfactory and offered her the option of continuing her employment subject to a work improvement plan or accepting a severance package premised on her retirement. In April 2018, claimant was provided with a settlement agreement and general release containing terms setting forth an offer of retirement with no termination date specified. Claimant rejected the offer and remained employed at RG as its property manager.

In a January 15, 2019 email to Weissman, claimant advised she was "interested in revisiting the last offer made to her," and her last day of work would be February 28, 2019. Weissman responded by providing claimant with a revised agreement on February 15, 2019 and confirming her February 28, 2019 termination date. The revised agreement provided for $2000 more than the initially proposed agreement and a provision releasing RG from a potential age discrimination claim under the Older Worker's Benefit Protection Act of 1990.[1] RG advised claimant it had no intention of discharging her from employment.

On February 20, 2019, claimant advised Weissman that she chose not to resign, contrary to what she told him the day prior about retiring as of February 28, 2019. To avoid confusion, Weissman sent claimant an email on February

---

[1] 29 U.S.C. § 626(f).

A-1370-19

20, 2019, to confirm her intentions, but she did not respond. Weissman sent a follow-up email to claimant on February 26, 2019, inquiring as to whether she was continuing her employ with RG or leaving so "proper arrangements" could be made. Claimant never responded to Weissman's February 26, 2019 email or advised whether she would accept the severance package or continue her employ with RG. Claimant moved out of her apartment without informing RG and never returned to work after February 28, 2019. After claimant's counsel advised RG that his client was provided a "Notice of Termination" on February 1, 2019, with an end date of February 28, 2019, counsel for RG clarified that she "has not been terminated from RG," and "RG never stated to [claimant] in any manner that she would be terminated if she did not accept the package or for any other reason." RG expected claimant "to appear for work on Monday, March 4, 2019[,] or her next regular scheduled day of work," but she never did.

Counsel for claimant posited that she was subjected to age related comments, and therefore, her termination was unlawful under the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -49. On March 3, 2019, claimant applied for unemployment benefits and was initially deemed eligible for benefits as of that date. RG appealed, asserting claimant abandoned her employment because she failed to report to work. The Appeal Tribunal

A-1370-19

conducted a hearing on April 30, 2019. Claimant did not appear. Weissman testified that claimant requested a severance package and then ceased communicating with RG after an offer was made and did not respond to follow-up efforts by RG.

Based on this record, the Appeal Tribunal declined to find claimant was discharged for misconduct but found she was not eligible to receive unemployment compensation benefits because she left work voluntarily without good cause attributable to the work under N.J.S.A. 43:21-5(a) as of March 3, 2019. Specifically, the Appeal Tribunal noted:

> The employer had issues with the claimant's work performance and considered separating her from employment. The claimant asked to stay on the job and have an attempt to improve her work performance to which the employer agreed. The claimant reached out to the employer and asked for a severance package. After the employer increased the amount in the severance package, the claimant failed to contact the employer. She did not accept nor decline the severance package. As part of her salary, the claimant received a free apartment. She moved without telling the employer. She failed to contact the employer after [February 28, 2019] although they made numerous attempts to contact her. Continuing work was available for the claimant had she reported to work.

Claimant was also disqualified to receive benefits from March 3, 2019, following a remand to the Director of Unemployment Insurance and was issued a Request for Refund of Unemployment Benefits in the amount of $5504.

In a handwritten letter dated May 21, 2019, claimant appealed the decision of the Appeal Tribunal, and on May 23, 2019, she appealed to the Board.

On July 18, 2019, the Board remanded the matter to the Appeal Tribunal, finding claimant established good cause with regard to her untimely appeal to the Board and her failure to testify at the hearing. On August 12, 2019, a second hearing was held before the Appeal Tribunal. Claimant and Weissman testified.

At the hearing, claimant testified that Weissman made inappropriate comments to employees that were age-related, and she felt some of her duties were delegated to younger employees. In May 2018, claimant stated she filed a complaint with Human Resources regarding the unsolicited severance package notwithstanding the fact she was provided with an opportunity to improve her performance. Weissman denied making any derogatory comments about claimant.

On August 13, 2019, the Appeal Tribunal again found claimant left work voluntarily without good cause attributable to the work and disqualified her as of February 24, 2019, under N.J.S.A. 43:21-5(a) because she did not

communicate with her employer for five consecutive workdays. The matter was remanded for a determination of claimant's potential liability for a refund of benefits she received. Once again, the Appeal Tribunal held claimant had to refund the $5504 she received. On August 26, 2019, claimant appealed to the Board. On October 23, 2019, the Board adopted the Appeal Tribunal's decision. This appeal followed.

On appeal, claimant contends that the Board abused its discretion by adopting the Appeal Tribunal's incorrect determination that she left work voluntarily without good cause attributable to the work in the face of age discrimination, retaliation, and a hostile work environment. Claimant also argues the denial of her unemployment compensation should be reversed because she was terminated by RG. We disagree.

II.

Our review of decisions by administrative agencies is limited. In re Stallworth, 208 N.J. 182, 194 (2011). For that reason, a party that challenges a final agency decision carries a substantial burden of persuasion. Gloucester Cnty. Welfare Bd. v. N.J. Civil Serv. Comm'n, 93 N.J. 384, 390-91 (1983). "In order to reverse an agency's judgment, an appellate court must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or . . . not supported by

substantial credible evidence in the record as a whole.'" In re Stallworth, 208 N.J. at 194 (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).

"In reviewing a final agency decision, such as that of the Board . . . , we defer to factfindings that are supported by sufficient credible evidence in the record." McClain v. Bd. of Rev., 237 N.J. 445, 456 (2019). "[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for [that of] the agency's even though the court might have reached a different result.'" In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

In assessing whether the Board acted within the scope of its authority, we consider:

> (1) [W]hether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant facts.
>
> [Lourdes Med. Ctr. of Burlington Cnty v. Bd. of Rev., 197 N.J. 339, 360 (2009) (quoting Brady v. Bd. of Rev., 152 N.J. 197, 211 (1997)).]

When considering those factors, we must defer to the agency's "expertise and superior knowledge of a particular field." In re Carter, 191 N.J. at 483 (quoting Greenwood, 127 N.J. at 513). Furthermore, deference to an agency's decision "is particularly appropriate" when the matter involves the interpretation and application "of the [a]gency's own regulation[s]." R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting I.L. v. N.J. Dep't of Human Servs., 389 N.J. Super. 354, 364 (App. Div. 2006)).

However, "we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" Utley v. Bd. of Rev., 194 N.J. 534, 551 (2008) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). "[A]lthough we accord some deference to the Board's interpretation of the statutory scheme that the Legislature has entrusted it to administer, we are not bound by a reasonable or mistaken interpretation of that scheme, particularly one that is contrary to legislative objectives." McClain, 237 N.J. at 456.

Our decision is also guided by fundamental principles of law governing unemployment compensation. "[T]he Unemployment Compensation Law 'is to be construed liberally in favor of allowance of benefits.'" Lord v. Bd. of Rev., 425 N.J. Super. 187, 195 (App. Div. 2012) (quoting Utley, 194 N.J. at 543). Our

State's Unemployment Compensation Law, N.J.S.A. 43:21-1 to -71, is primarily designed to lessen the impact of unemployment that befalls workers without their fault.  Brady, 152 N.J. at 212.  "The public policy behind the Act is to afford protection against the hazards of economic insecurity due to involuntary unemployment."  Yardville Supply Co. v. Bd. of Rev., 114 N.J. 371, 374 (1989) (emphasis added); see also N.J.S.A. 43:21-2 (declaring public interest in addressing the burden of "[i]nvoluntary unemployment").  Therefore, a person who voluntarily quits or abandons work for personal reasons, rather than for causes attributable to work, is ineligible for benefits.

Applying these principles, we conclude the Board's decision here was supported by substantial credible evidence in the record and was based upon a reasonable interpretation of the law.  N.J.S.A. 43:21-5(a) provides that an individual is disqualified for unemployment compensation benefits where that "individual has left work voluntarily without good cause attributable to such work."  In order to avoid disqualification, a claimant must show she left work for "good cause attributable to work."  Brady, 152 N.J. at 218.  "Good cause means 'cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed,' and the reasons for terminating employment 'must meet the test of ordinary common sense and

prudence.'" Heulitt v. Bd. of Rev., 300 N.J. Super. 407, 414 (App. Div. 1997) (quoting Zielenski v. Bd. of Rev., 85 N.J. Super. 46, 52 (App. Div. 1964)).

Ultimately, "an employee's separation from employment" is voluntary if "the decision whether to go or to stay lay at the time with the worker alone." Lord, 425 N.J. Super. at 191 (quoting Campbell Soup Co. v. Bd. of Rev., 13 N.J. 431, 435 (1953)). "[T]he one who initiates that action which eventually leads to the separation is the one who is responsible for breaking the employer-employee relationship." Id. at 190.

An employee who abandons their position is "subject . . . to disqualification for benefits for voluntarily leaving work without good cause attributable to such work." N.J.A.C. 12:17-9.11(a). The Department's regulation defines abandonment to include "[a]n employee who is absent from work for five or more consecutive workdays and who without good cause fails to notify the employer of the reasons for his or her absence." Ibid.

Applying the governing law and regulation, we agree with the Board's determination. Claimant did not report to work for well more than five consecutive workdays and failed to communicate with her employer by ignoring Weissman's emails from February 20 to February 26, 2019, constituting abandonment of employment. Whether claimant has a viable age discrimination

11

cause of action under the NJLAD is irrelevant to our determination of whether the Board correctly denied her application for unemployment compensation benefits. The decision of the Board was not arbitrary, capricious, or unreasonable. Substantial credible evidence in the record as a whole supports the determination that claimant abandoned her employment by failing to return to work for more than five consecutive workdays, N.J.A.C. 12:17-9.11(a), thereby leaving work voluntarily without good cause attributable to the work, N.J.S.A. 43:21-5(a).

Claimant's remaining arguments lack sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION