**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1336-23

JOSEPH J. TRONLONE,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and BERAT CORPORATION,

     Respondents.

_____

        Submitted October 15, 2025 – Decided November 26, 2025

        Before Judges Gilson and Perez Friscia.

        On appeal from the Board of Review, Division of Unemployment Insurance, Department of Labor and Workforce Development, Docket No. 299336.

        Joseph J. Tronlone, self-represented appellant.

        Matthew J. Platkin, Attorney General, attorney for respondent Board of Review (Donna Arons, Assistant Attorney General, of counsel; Elizabeth A. Davies, Deputy Attorney General, on the brief).

PER CURIAM

Joseph J. Tronlone appeals from a final agency decision by the Board of Review (Board), which adopted a determination that Tronlone had left his employment voluntarily without good cause attributable to the work and he was, therefore, liable to refund $6,237 he had received as unemployment benefits. Because the Board's determination was supported by substantial credible evidence, and was not arbitrary, capricious, or unreasonable, we affirm.

I.

For approximately three months from April 20, 2020, to July 16, 2020, Tronlone was employed as a cashier at a ShopRite. Tronlone's employment took place during the COVID-19 pandemic. In late July 2020, Tronlone stopped going to work, his lease expired, and he relocated to Indiana.

After leaving work, Tronlone applied for unemployment benefits in New Jersey, which he received from July 25, 2020, through January 23, 2021. In total, Tronlone received $6,237 in unemployment benefits, at a weekly rate of $231.

On June 20, 2022, the Director of the Department of Labor determined that Tronlone was not qualified to receive those benefits because he had left work voluntarily. Consequently, the Director sent a letter to Tronlone demanding a refund of the $6,237 in benefits he had received.

A-1336-23

Tronlone administratively appealed the Director's determination to the Appeal Tribunal (Tribunal), and a hearing was held on September 6, 2022. At that hearing, Tronlone and a representative of his employer testified.

The representative of ShopRite testified that the store had provided its employees with personal protective equipment (PPE), including masks and gloves. The representative also stated that ShopRite installed protective barriers at cash registers, put markers on the ground to help customers stay six feet apart, and limited the number of customers that could come inside the store at any given time.

Tronlone testified that he resigned from working at ShopRite because he felt that his health and safety were at risk. Specifically, he stated he stopped going to work because he started feeling ill. He acknowledged, however, that three days later he tested negative for COVID-19. Despite that negative result, Tronlone never returned to work out of fear of contracting the COVID-19 virus.

Tronlone also claimed that he believed ShopRite had not taken adequate measures to protect its employees from COVID-19. When asked, Tronlone acknowledged that the store had provided employees with masks, gloves, and other safety equipment. He also admitted that he never complained to his employer regarding its COVID-19 safety protocols.

3

On September 6, 2022, the Tribunal affirmed the Director's determination, finding that Tronlone had left work voluntarily without good cause attributable to the work. The Tribunal found that Tronlone's fear of contracting COVID-19 was a personal reason for leaving work because his employer had taken adequate precautions to reduce exposure to the virus. The Tribunal also found that Tronlone did not qualify for Pandemic Unemployment Assistance (PUA) under the CARES Act, 15 U.S.C. §§ 9001 to 9141. Finally, the Tribunal determined that Tronlone was liable to refund $6,237, which he had received in unemployment benefits.

Tronlone then appealed the Tribunal's decision to the Board. On November 30, 2023, the Board reviewed the record, adopted the Tribunal's factual findings and legal conclusions, and directed Tronlone to refund the benefits he had received. Tronlone now appeals from the Board's final agency decision.

## II.

On appeal, Tronlone makes three arguments. First, he contends that he was entitled to unemployment benefits because he voluntarily left work with good cause attributable to the work. He asserts that good cause existed because ShopRite did not follow COVID-19 safety protocols, which caused an unsafe

work environment.  Second, Tronlone argues that he was eligible for unemployment benefits under the CARES Act.  Finally, he claims he did nothing wrong, and he should not be liable for a refund.

Our scope of review of agency determinations is limited.  Seago v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 257 N.J. 381, 391 (2024) (citing Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018)).  A reviewing court will not reverse an agency decision unless it is "arbitrary, capricious, or unreasonable or . . . not supported by substantial credible evidence in the record as a whole."  In re Ambroise, 258 N.J. 180, 197 (2024) (omission in original) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).  We afford "[w]ide discretion . . . to administrative decisions because of an agency's specialized knowledge."  In re Request to Modify Prison Sentences, 242 N.J. 357, 390 (2020).

A.  Whether Tronlone Left His Employment for Good Cause.

The Unemployment Compensation Law (the Law), N.J.S.A. 43:21-1 to -71, governs unemployment compensation in New Jersey.  Under the Law employees who quit their jobs are not eligible for unemployment benefits unless they establish that they quit for "good cause attributable to" the work.  N.J.S.A.

5

43:21-5(a). When determining whether "good cause" exists, "courts have construed the phrase to mean 'cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed.'" Brady v. Bd. of Rev., 152 N.J. 197, 214 (1997) (quoting Domenico v. Bd. of Rev., Dep't of Lab. & Indus., 192 N.J. Super. 284, 287 (App. Div. 1983)).

An employee who resigns bears the burden of showing he or she did so with good cause. N.J.A.C. 12:17-9.1(c). The test for determining whether good cause is shown is one of "ordinary common sense and prudence." Brady, 152 N.J. at 214 (quoting Zielenski v. Bd. of Rev., 85 N.J. Super. 46, 52 (App. Div. 1964)). The employee's decision to leave work "must be compelled by real, substantial and reasonable circumstances[,] not imaginary, trifling and whimsical ones." Ibid. (quoting Domenico, 192 N.J. Super. at 288). In other words, the employee's reason for quitting must be "so compelling as to give [him or her] no choice but to leave the employment." N.J.A.C. 12:17-9.1(b).

After listening to the testimony of Tronlone and ShopRite's representative, the Tribunal found that Tronlone left his employment for personal reasons not attributable to ShopRite. That finding is adequately supported by the record. ShopRite took several precautions to decrease the chance that its employees

would contract COVID-19, including installing protective barriers at cash registers, limiting the number of customers that could enter the store at any given time, and helping customers and employees socially distance by putting six-feet markers on the ground. Moreover, Tronlone never contracted COVID-19 while working at ShopRite.

Tronlone makes two claims that he believes gave him good cause to leave work: (1) that some employees took their masks off after hours; and (2) that some customers did not follow arrow indicators placed in the store aisles. Those claims do not create a work environment that is "so unsafe, unhealthful, or dangerous as to constitute good cause [to leave] work." N.J.A.C. 12:17-9.4. Critically, Tronlone never complained to ShopRite about his safety concerns. Doing so may have prompted his employer to take additional steps to protect him and other employees. "A claimant has the 'responsibility to do whatever is necessary and reasonable in order to remain employed.'" Brady, 152 N.J. at 214 (quoting Heulitt v. Bd. of Rev., Dep't of Lab., 300 N.J. Super. 407, 414 (App. Div. 1997)). Thus, Tronlone has failed to demonstrate that ShopRite's working conditions gave him good cause to leave work.

The Tribunal also found that Tronlone's lease was ending at the end of July 2020, and that he voluntarily relocated to Indiana. An employee who

"[r]elocat[es] to another area for personal reasons," does not qualify for unemployment benefits. N.J.A.C. 12:17-9.1(e)(6).

B. Whether Tronlone Qualified for Benefits Under the CARES Act.

Tronlone also argues that he qualified for PUA benefits under the CARES Act. In making that argument, Tronlone does not point to a specific provision in the Act to support this contention. More to the point, his argument is not supported by the record.

The CARES Act expanded eligibility and payment for unemployment benefits to certain categories of individuals affected by COVID-19. Sullivan v. Bd. of Rev., Dep't of Lab., 471 N.J. Super. 147, 153 (App. Div. 2022). Under the Cares Act, the Secretary of Labor was to provide "any covered individual unemployment benefit assistance while such individual is unemployed, partially unemployed, or unable to work for the weeks of such unemployment with respect to which the individual is not entitled to any other unemployment compensation." 15 U.S.C. § 9021(b). Put differently, the CARES Act allowed individuals who did not qualify for state unemployment or pandemic emergency compensation to receive benefits if they met the Act's eligibility requirements. Sullivan, 471 N.J. Super. at 153. To qualify, an individual had to certify that he

or she had been unavailable or unable to work because of one of the qualifying reasons identified in the Act. See 15 U.S.C. § 9021(a)(3)(A)(ii)(I).

From the plain language of the Act, the only plausible category Tronlone could qualify under was 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(ii), which stated "the individual has to quit his or her job as a direct result of COVID-19." The phrase "direct result of COVID-19" in subsection (ii), means "an immediate result of the [COVID-19 public health emergency] itself, and not the result of a longer chain of events precipitated or exacerbated by the [pandemic]." 20 C.F.R. § 625.5(c).

The record does not show that Tronlone had to quit his job because of COVID-19. Instead, the Board adopted the Tribunal's finding that Tronlone chose to quit his job out of fear that he may contract the virus, despite his employer's implementation of several safety protocols. Again, Tronlone never attempted to communicate his concerns to his employer, which never gave the employer a chance to alleviate those concerns.

Accordingly, the Board's finding that Tronlone did not qualify for unemployment benefits under the CARES Act is supported by substantial credible evidence and was not arbitrary, capricious, or unreasonable because it is consistent with the Act and its regulations.

A-1336-23

C.  The Board May Seek A Refund of Benefits Paid to an Ineligible Recipient.

Under N.J.S.A. 43:21-16(d), a claimant must repay benefits to the Unemployment Compensation Fund if it is determined that the claimant was not entitled to receive those benefits.  In that regard, the Law states that "[w]hen it is determined . . . that any person has received any sum as benefits . . . while otherwise not entitled to receive such sum as benefits, such person . . . shall be liable to repay those benefits in full."  Ibid.  We have explained the refund must be made without regard to whether the claimant received those benefits in good faith.  See Bannan v. Bd. of Rev., 299 N.J. Super. 671, 674 (App. Div. 1997) (citing Fischer v. Bd. of Rev., 123 N.J. Super. 263, 266 (App. Div. 1973)) (explaining that "N.J.S.A. 43:21-16(d) requires the full repayment of unemployment benefits received by an individual who, for any reason, regardless of good faith, was not actually entitled to those benefits").  Therefore, even though Tronlone may have applied for unemployment benefits in good faith, he still must refund those benefits to the Unemployment Compensation Fund.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-1336-23