**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0500-24

KELVIN IXIM,

    Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and GRADSTAFF INC.,

    Respondents.

_____

> Argued December 9, 2025 – Decided February 19, 2026
>
> Before Judges DeAlmeida and Torregrossa-O'Connor.
>
> On appeal from the Board of Review, Division of Unemployment Insurance, Department of Labor and Workforce Development, Docket No. 278238.
>
> Sarah Hymowitz argued the cause for appellant (Legal Services of New Jersey, attorneys; Sarah Hymowitz, on the briefs).
>
> Gordon Estes, Deputy Attorney General, argued the cause for respondent Board of Review (Matthew J. Platkin, Attorney General, attorney; Christopher

Weber, Assistant Attorney General, of counsel; Ryne A. Spengler, Deputy Attorney General, on the brief).

PER CURIAM

Claimant Kelvin Ixim appeals from the October 19, 2023 final agency determination of the Board of Review (Board), finding him ineligible for unemployment benefits pursuant to N.J.S.A. 43:21-5(a),[1] and from the Board's subsequent decision declining to reopen the case upon claimant's request for reconsideration. After reviewing the record in light of applicable law, we affirm in part and vacate and remand in part for the Board to consider and provide a statement of reasons setting forth its legal conclusions and findings of fact regarding claimant's alternative argument pursuant to N.J.S.A. 43:21-5(c),[2] asserting he was only employed for a brief period before leaving otherwise suitable work entitling him to a shortened disqualification period.

---

[1] N.J.S.A. 43:21-5(a) provides for a disqualification from unemployment benefits when a claimant leaves "work voluntarily without good cause attributable to such work."

[2] N.J.S.A. 43:21-5(c) provides "disqualification shall continue for the week in which the failure occurred and for the three weeks which immediately follow"

> if it is found that the [claimant] has failed, without good cause, either to apply for available, suitable work when so directed by the employment office or the director or to accept suitable work when it is offered.

A-0500-24

I.

The following procedural summary is undisputed. Claimant filed for unemployment benefits on May 2, 2021, following his resignation from his job as a remote call center representative at Gradstaff, Inc., claiming he was "extremely unhappy" and had "issues with [his] physical and mental health and the difficulty of the job." Claimant received benefits until September 2021, totaling $2,907, before receiving notice from the Director of the Division of Unemployment Insurance on December 20, 2021, advising he was disqualified from benefits for voluntarily leaving his job at Gradstaff "without good cause attributable to the work," and was liable for a full refund of benefits already paid to him.

Claimant appealed and a telephonic hearing followed on May 27, 2022, before the Appeal Tribunal. The examiner commenced the hearing identifying the issues as concerning claimant's "voluntarily leaving" his position and his liability for a full refund.

Only claimant testified at the hearing. He explained he began working remotely for Gradstaff on November 16, 2020, and his last day was March 26, 2021. He explained he worked in the call center "Monday through Friday" from approximately 9:00 a.m. to 5:00 p.m. When asked why he resigned, he stated

3

he "left because [he] was having issues with [his] physical and mental health and the difficulty of the job." Claimant indicated he "received unemployment benefits in the amount of $153 [per week] from May 8 to [September 11, ]2021."

Claimant explained he had never worked for a call center, but the description he received upon his hiring was consistent with his actual experience. Although admitting the job met his expectations, he described having "a hard time with what was going on with [his] life" at the time, as his grandfather was ill with cancer and his training for the job "didn't leave very much time . . . [to] help [his] family." He recalled his supervisor advised they could "figure something out" if he "absolutely needed" to help take care of his grandfather, but missing training would be problematic. He also indicated his grandfather was not sick at the time he started his job at Gradstaff.

Claimant further described seeing a doctor for an "issue with [his] heart and with [his] pulse" and the doctor "determined that . . . [claimant's] sedentary lifestyle wasn't helping" and recommended claimant incorporate exercise. Claimant explained he "was just having a difficult time with the job just because it was something that [he] had never really done before." Specifically, he described:

> From the time I clocked in to the time I clocked out, it was just constant calls back-to-back and it didn't leave

A-0500-24

very much room for any breaks. And just with the time period, just being home all the time was really tough and I was just extremely unhappy and really having a hard time getting through the workday.

Claimant testified, without documentation or further elaboration, he "believe[d]" he had treatment for the "cardiac issue" in late February, after seeing a doctor because of "flu-like symptoms." He tested negative for COVID-19, but claimed his "pulse was extremely high" so he underwent "electrophysiolog[ical] test[ing]." However, claimant admitted the doctor found he was "just very out of shape." The doctor acknowledged claimant's "sedentary" work, but according to claimant made no medical recommendation that he leave his job.

Claimant testified he "wouldn't really know what the solution would be" for this problem because "it was just the nature of the job." He described "tr[ying] to incorporate [walks] during [his] lunch breaks" per his doctor's advice to get more exercise but it did not help "because [he] had a limited time for lunch." He explained "exercis[ing] after work" was not possible for him because it was dark "which [wouldn't be] very safe."

Claimant further indicated he had no other "physical health issues" during his employment and did not seek any other treatment. He testified he felt the need to consult a mental health provider but did not, and he felt "trapped"

5

A-0500-24

because he "did the same thing over and over again for four months," which "was very draining and taxing." Claimant explained he spoke to his supervisor about resources and described his supervisor as "pretty flexible in that if [he] absolutely needed help with something, that they could be there" for him, but the company could only provide him with "a fifteen-minute break, that [he] could spread out through the day, but it could only add up to those fifteen minutes."

Claimant's attorney asked him only three questions: (1) "[wa]s it correct that [he] had never worked in this type of customer service before"; (2) "had [he] ever worked for a call center before"; and (3) "did [he] return to work after leaving" Gradstaff. Claimant answered he had never worked for a call center or this type of customer service and, after leaving, he later returned to the restaurant where he previously worked. Thereafter, claimant declined the opportunity to add or clarify any information.

Claimant's attorney acknowledged his client left Granstaff voluntarily, but argued claimant should not be disqualified from benefits for voluntarily leaving without good cause attributable to the work. Counsel contended claimant's health concerns made the job unsuitable, and he should "not [be] disqualified from benefits." Arguing "the job did prove to be unsuitable here because

6

although he tried it out . . . he was not able to continue in the job and maintain his health," counsel clarified "it's not a medical good cause case, it's an unsuitability of the work case." Counsel argued alternatively, even if the job were suitable, claimant was "still entitled to benefits because he worked there only for a brief period of time and voluntarily left the job for personal reasons."

On June 1, 2022, the Appeal Tribunal rendered its written decision in which it made the following findings of fact:

> Claimant worked for [Gradstaff], as a call center representative, from 11/16/2020 through 3/26/[20]21, when he resigned. . . . Claimant . . . accepted the conditions of the job as being on the phone constantly. [He] performed this task as he expected per his job description at hire. . . . Claimant in 12/2020 wanted more time off from the job to help with his ill grandfather [but] the employer could not accommodate [this]. . . . Claimant in 2/[20]21 visited a physician who did not diagnose . . . claimant with C[OVID-19]. The physician only advised . . . claimant to exercise more so [he] returned to work. [He] was, however, dissatisfied with the constant phone call tasks and resigned.
>
> On a claim for benefits dated 5/2/[20]21, with a weekly benefit rate of $153, . . . claimant received benefits for the weeks ending 5/8/[20]21 through 9/11/[20]21 in the amount of $153 each week for a total of $2,907.

7

The Appeal Tribunal rejected claimant's argument that he should not be disqualified for refusing unsuitable work after a brief period. Based on claimant's testimony, the Appeal Tribunal found the work was suitable:

> Claimant admits that the job was as expected even after working longer than briefly. His admission therefore proves that the work was suitable for him. . . . Claimant in 12/2020 was in a brief period when he asked for a work accommodation but was denied. He then continued to work regardless as further proof that the work was suitable after that period. He later in 2/[20]21 sought medical treatment and was not given any work related to medical advi[c]e to leave work as further proof that the work was suitable. The contention therefore that his work was brief is rejected as he did not refuse the work in either of the dates in question. The contention that the work was not suitable is also rejected as . . . claimant did not refuse the work for his or his grandfather's health.

The Appeal Tribunal noted claimant "left work because he was dissatisfied with the sedentary working conditions." It found claimant "secured care for his grandfather and did not have to leave work for this cause." Emphasizing claimant was not medically advised to leave his job, the Appeal Tribunal concluded "claimant left work voluntarily without good cause attributable to the work and [wa]s disqualified for benefits as of 3/21/[20]21 in accordance with N.J.S.A. 43:21-5(a)." The Appeal Tribunal also found "no disqualification ar[ose] under N.J.S.A. 43:21-5(c), as . . . claimant did not refuse

8

to accept or apply for suitable work." It found claimant liable to refund the sum "received as benefits for the weeks ending 5/8/[20]21 through 9/11/[20]21, in accordance with N.J.S.A. 43:21-16(d)."[3]

Claimant appealed this decision to the Board, which, on October 19, 2023, "affirmed and adopted" the factual determinations made by the Appeal Tribunal finding them "substantially correct." The Board agreed "claimant was disqualified for benefits as [of] March 21, 2021, in accordance with N.J.S.A. 43:21-5(a)." The Board outlined and addressed claimant's arguments on appeal:

> Claimant's counsel contends that Wojcik v. Board of Review, 58 N.J. 341 (1971), applies to the claimant in this case, arguing that the work was unsuitable for . . . claimant, and he should not be disqualified for benefits under N.J.S.A. 43:21-5(a). Counsel further argues that even if the Board determines that the work was suitable, . . . claimant should still not be disqualified under N.J.S.A. 43:21-5(a) and the matter should be considered as a refusal of suitable work issue as provided by N.J.A.C. 12:17-11.5(b).[4] The Board disagrees with the counsel's arguments.

---

[3] N.J.S.A. 43:21-16(d) provides that when a claimant receives benefits to which he or she is not entitled, such claimant "shall be liable to repay those benefits in full."

[4] N.J.A.C. 12:17-11.5(b) provides a claimant "who accepts suitable work for a brief period, and voluntarily leaves such work for reasons not attributable to the work, shall not be disqualified for benefits for voluntarily leaving work."

In finding <u>Wojcik</u> dissimilar to claimant's case, the Board

> look[ed] to regulation [N.J.A.C.] 12:17-11.2(a)[5] which defines suitability of work to determine if some other criteria listed for consideration under this regulation would establish that the work was unsuitable.  Upon review of the record, [the Board] d[id] not find that any element under this regulation establishe[d] that the work was unsuitable.

The Board then stated "four months of employment under the circumstances in this case [did] not constitute a 'brief period'" and claimant's "reason for leaving was attributed to the work."  The Board added only that it "d[id] not find that . . . claimant's separation should be viewed as a refusal of suitable work under N.J.S.A. 43:21-5(c)."

On September 9, 2024, the Board denied claimant's request to reopen the matter upon "careful consideration of . . . claimant's communication dated August 8, 2024, and reconsideration of the record."

II.

On appeal, claimant argues the Board applied the incorrect legal standard in evaluating his claim.  He again argues the Board erred by applying the "voluntary quit" standard, N.J.S.A. 43:21-59(a), which disqualifies claimants who "le[ave] work voluntarily without good cause attributable to such work."

---

[5]  N.J.A.C. 12:17-11.2(a) defines suitability of work considerations.

He reprises his claim that he voluntarily left an "unsuitable" job, which he held for only a "brief period." Alternatively, he asserts that even if the work were deemed "suitable," pursuant to N.J.A.C. 12:17-11.5(b),[6] his disqualification from benefits should have been limited to four weeks, N.J.S.A. 43:21-5(c).

Claimant relies on multiple unpublished decisions[7] of the Board and Appeal Tribunal which provide a "brief period" is "no more than six months." As such, claimant asserts "the Board[] fail[ed] to follow its own precedent or explain why the instant matter [wa]s subject to a different standard [which] renders its decision arbitrary." He notes "pursuant to N.J.S.A. 43:21-6(c), decisions of the Appeal Tribunal that are not appealed automatically become decisions of the Board of Review and, thereby, final agency decisions" and the decisions claimant included were not appealed. Claimant asserts "the Board . . . must be consistent with the standards it uses" "in the interests of fundamental fairness, transparency, and stare decisis" and "there can be no public confidence in such an arbitrary system of adjudication."

---

[6] N.J.A.C. 12:17-11.5(b) makes exception to blanket disqualification for those who voluntarily leave suitable work after a brief period.

[7] We note we are not bound by these unpublished decisions as "no unpublished opinion shall constitute precedent or be binding upon any court." R. 1:36-3.

A-0500-24

The Board argues claimant "failed to meet th[e] burden" of showing "the agency's action was arbitrary, capricious, or unreasonable," because: (1) claimant "was never advised by a medical professional to leave his job due to concerns relating to his sedentary lifestyle" nor did he "obtain[] or provide[] his employer with documentation that he had a medical condition caused by or aggravated by the job"; (2) the record showed claimant "voluntarily left his position without good cause attributable to the work"; (3) claimant "failed to do 'whatever is necessary and reasonable' to remain employed"; (4) the record demonstrates the employment was suitable and claimant resigned due to personal health concerns and dissatisfaction with "the job, not the 'suitability' of the work"; and (5) its prior decisions are unpublished and are not precedential.

At oral argument, claimant again argued the Board arbitrarily ignored its own precedent when it evaluated whether claimant's appointment constituted a brief period. The Board maintained the exception provided by N.J.A.C. 12:17-11.5(b) is narrow and further that "brief period" is a fact-specific determination, not a "rigid" six-month rule.

III.

"We review a decision made by an administrative agency entrusted to apply and enforce a statutory scheme under an enhanced deferential standard."

A-0500-24

E. Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022).  Accordingly, "we will disturb an agency's adjudicatory decision only upon a finding that the decision is 'arbitrary, capricious or unreasonable,' or is unsupported 'by substantial credible evidence in the record as a whole.'" Sullivan v. Bd. of Rev., 471 N.J. Super. 147, 155-56 (App. Div. 2022) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 580 (1980)).

The burden to show an agency's abuse of discretion "is on the challenger." Parsells v. Bd. of Educ., 472 N.J. Super. 369, 376 (App. Div. 2022).  Further, we afford "wide discretion . . . to administrative decisions because of an agency's specialized knowledge."  In re Request to Modify Prison Sentences, 242 N.J. 357, 390 (2020); see also Sullivan, 471 N.J. Super. at 156.  Substantial deference is given to an agency's interpretation of its own statutes.  N.J. Tpk. Auth. v. Am. Fed'n of State, Cty. & Mun. Emps., Council 73, 150 N.J. 331, 351 (1997).

The purpose of the Unemployment Compensation Act, N.J.S.A. 43:21-1 to -71 (the Act), "is to provide some income for the worker earning nothing, because he is out of work through no fault or act of his own."  Utley v. Bd. of Rev., 194 N.J. 534, 543 (2008) (quoting Yardville Supply Co. v. Bd. of Rev., 114 N.J. 371, 375 (1989)).  The Act is remedial in nature and not only protects

13

employees who are discharged, but also those "who voluntarily quit their jobs for good cause attributable to their work." Id. at 543-44.

N.J.S.A. 43:21-5 enumerates distinct circumstances independently warranting a claimant's disqualification from benefits. Pertinent here, disqualification results under subsection (a) if a claimant terminates "work voluntarily without good cause attributable to such work."

Importantly, the Act does not extend "eligibility [to] persons who leave work for good, but personal, causes." Self v. Bd. of Rev., 91 N.J. 453, 457 (1982). As such, "a claimant has the 'responsibility to do whatever is necessary and reasonable in order to remain employed.'" Brady, 152 N.J. at 214 (quoting Heulitt v. Bd. of Rev., 300 N.J. Super. 407, 414 (App. Div. 1997)). The determination of whether a claimant's reasons for leaving a job are "personal or work-related" is "a fact-sensitive analysis." Utley, 194 N.J. at 550; see also Haley v. Bd. of Rev., 245 N.J. 511, 523 (2021). We have long held "mere dissatisfaction with working conditions which are not shown to be abnormal or do not affect health, does not constitute good cause for leaving work voluntarily." Heulitt, 300 N.J. Super. at 414 (quoting Zielenski v. Bd. of Rev., 85 N.J. Super. 46, 54 (App. Div. 1964)). More specifically, a claimant's dissatisfaction with employment conditions matching those described "at the

14

commencement of . . . employment" constitutes mere personal dissatisfaction and, thus, warrants the denial of benefits due to an absence of "good cause for resigning." Ibid.

A.

Claimant here asserts the Board failed to properly analyze the unsuitability of the job pursuant to the "refusal of suitable work" standard as defined in N.J.S.A. 43:21-5(c). The provision states:

> In determining whether or not any work is suitable for an individual, consideration shall be given to the degree of risk involved to health, safety, and morals, the individual's physical fitness and prior training, experience and prior earnings, the individual's length of unemployment and prospects for securing local work in the individual's customary occupation, and the distance of the available work from the individual's residence.
>
> [N.J.S.A. 43:21-5(c)(1) (emphasis added).]

N.J.A.C. 12:17-11.2(a)(1) directs, "For a position to be considered suitable, all of the factors in [N.J.S.A. 43:21-5(c)(1)] must be judged with respect to the particular individual involved." As such, "suitability" is a highly fact-sensitive determination. N.J.A.C. 12:17-11.2(a); see also Trupo v. Bd. of Rev., 268 N.J. Super. 54, 60 (App. Div. 1993).

Our Supreme Court directs claimants "should be given a reasonable time to measure their ability to cope with their new work." Wojcik, 58 N.J. at 346

15

(concluding approximately one month was a "reasonable" amount of time). A "reasonable" amount of time is determined in the context of the specific circumstances leading to a job's "unsuitability" for a claimant. Ibid.

The record persuades us both the Appeal Tribunal and the Board appropriately concluded the job was not "unsuitable." Claimant testified he was dissatisfied with the job, despite its meeting his expectations, as it was causing him to feel isolated, sedentary, and generally unwell. He also confirmed, however, he was not medically restricted from the job. Nor was he required to be the caregiver for a family member. Although claimant presented sympathetic testimony regarding his feelings of isolation and deteriorating fitness attendant to his call center job, we will not disturb the Board's determination the employment was suitable, which is firmly grounded in its reasonable interpretation of the record. See Sullivan, 471 N.J. Super. at 155-56.

B.

We turn to claimant's alternative challenge, arguing the Board did not adequately address whether his disqualification should be limited to four weeks, because he left suitable work after a brief period for personal reasons not attributable to the work.

N.J.A.C. 12:17-11.5 generally expands on N.J.S.A. 43:21-5(c). In particular, the regulation provides:

> An individual who accepts suitable work for a brief period, and voluntarily leaves such work for reasons not attributable to the work, shall not be disqualified for benefits for voluntarily leaving work. The individual may be subject to disqualification for refusal to accept suitable work in accordance with N.J.S.A. 43:21-5(c).
>
> [N.J.A.C. 12:17-11.5(b) (emphasis added).]

To assess, even with substantial deference, the Board's determination that claimant's employment was not for a brief period, we must look to the Board's decision. Importantly, our ability to resolve an appeal from a final decision is largely dependent upon the administrative agency's adequately stating its reasons, legal standards, and conclusions reached. N.J.S.A. 52:14B-10(d) (the final decision must "include findings of fact and conclusions of law, separately stated and . . . based only upon the evidence of record at the hearing"). The "findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." Ibid. "Where the agency record is insufficient, we may order a remand to the agency to more fully develop the record." ACLU of N.J. v. Hendricks, 233 N.J. 181, 201 (2018); see also Noble Oil Co. v. Dep't of Env't Prot., 123 N.J. 474, 475 (1991) (remanding to supplement an inadequate record).

Based on our assessment of the Board's final decision adopting the Appeal Tribunal's findings, we determine a limited remand is warranted. Here, because neither the Board's nor the Appeal Tribunal's otherwise thorough findings identified the guiding legal standard it applied to conclude the employment did not constitute a brief period or stated the facts found and applied to that standard to reach their conclusions, we are unable to fairly review claimant's arguments. Likewise, we cannot fairly review the conclusion N.J.A.C. 12:17-11.5 is inapplicable to claimant's situation from the simple statement that claimant's departure was not within a "brief period." The Appeal Tribunal's isolated finding that because claimant did not quit upon his complaints in either December 2020 or February 2021, he "work[ed] longer than briefly" renders us unable to discern what constitutes a "brief period," and what test or considerations are employed. Accordingly, we cannot evaluate the soundness of the Board's discretion used in applying such a standard.

We therefore remand for the Board to consider the discreet issue of whether claimant's resignation fell within a brief period and provide a supplemental statement of reasons. We do not suggest the outcome or restrict the Board's discretion to limit or reopen the matter. However, on remand, the Board shall identify its reasons for determining N.J.A.C. 12:17-11.5 was

18

inapplicable, including the legal standard it applied, the facts found, and the evidence in the record supporting that finding.  See N.J.S.A. 52:14B-10(d).

Affirmed in part, vacated and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

19